MARGARET M. CHAREST, trustee, *vs.* MARIE A. ST. ONGE
& another
(and a companion case[1]).

Middlesex. April 6, 1955. — June 3, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Trust*, Resulting trust, Constructive trust. *Executor and Administrator*,
Recovery of assets. *Probate Court*, Petition, Demurrer. *Equity
Pleading and Practice*, Bill, Demurrer. *Husband and Wife*, Transfer
of husband's personalty. *Equity Jurisdiction*, Fraudulent conveyance,
Plaintiff's clean hands. *Fraudulent Conveyance*.

A resulting trust in real estate in favor of a certain man was not shown
by allegations that he purchased the property and took title in the
name of a woman "for his convenience" intending that she should
be only "a straw for him" without beneficial interest, that for the
purchase price she gave her note secured by a mortgage on the prop-
erty and guaranteed by him, and that subsequently the note was paid
with his funds and he expended substantial amounts to improve the
property: there was no allegation that they agreed upon her holding
title as a mere straw or that at the time of the purchase he agreed with
her to pay the note or that there was a loan of credit by her to him.
[630-631]
In a petition in equity by the personal representative of a decedent seek-
ing the return of personal property in the possession of the respondent,
allegations that the decedent had entrusted the respondent "with the
safe keeping, for him" of property "the amount and nature of which"
the petitioner did not know and the respondent had refused to divulge,
and that the respondent had prevented others from giving information
concerning such property to the petitioner, were not demurrable on
the ground that they were "too vague and indefinite to state a cause
of action." [633, 634]
A demurrer to the whole of a petition in equity in a Probate Court on
the ground of failure to state a cause of action could not be sustained
where a cause of action was stated by the allegations respecting one
of the subject matters of the petition. [634]
A husband during his life, by a genuine transfer not testamentary in
effect, may dispose of personal property of his without his wife's

[1] The companion case is by Margaret M. Charest, administratrix, against
Marie A. St. Onge and Atlantic Pipe & Supply Co., Inc.

consent for the purpose of disinheriting her with respect to such property. [634–635]

Alleged fraud of one against his creditors and his wife in transferring corporate stock for his convenience without consideration to a mere straw who agreed to hold it for him would not bar a suit brought by the personal representative of the transferor after his death against the transferee seeking an adjudication that the petitioner had the title to the stock, if he was not obliged to rely on the fraud in making out his case. [635]

Two PETITIONS IN EQUITY, filed in the Probate Court for the county of Middlesex on February 15, 1954, and July 7, 1952, respectively.

Demurrers were heard by *Leggat, J.*

*James D. Assaf & Edward J. Barshak,* for the petitioners.

*Edward O. Proctor, (Edward O. Proctor, Jr.,* with him,) for the respondents.

WILKINS, J. These are two petitions in the estate of Abraham J. Charest, late of Medford. In each case a demurrer to the petition was sustained, the petition was dismissed, and the petitioner appealed.

### THE FIRST CASE.

This petition by Margaret M. Charest, as trustee under the will of her late husband Abraham J. Charest, seeks to establish a resulting trust of real estate held by the respondent Marie A. St. Onge subject to a mortgage to the respondent Oscar J. Menard.

The material allegations of the petition are the following: In December, 1937, Abraham ceased to live with the petitioner. Until 1941 he owned real estate on Albany Street, Boston, which was subject to a mortgage of $30,000 to the Charlestown Five Cents Savings Bank. On December 24, 1941, Abraham, "although financially able to prevent the foreclosure of the mortgage . . . permitted and encouraged the bank to . . . [foreclose] in order that he might divest the petitioner, as his wife, of any right, title or interest therein and to place the said property beyond her reach." On January 6, 1942, after the bank had foreclosed its mortgage, Abraham purchased the real estate from the bank for

$40,000, and the bank delivered a deed to Marie. On the same day Marie gave the bank a note in the amount of $40,000 secured by mortgage on the property. Title was taken by Abraham in Marie's name "for his convenience and for the purpose of placing the said property beyond any control" by the petitioner. The bank "with knowledge of this arrangement" insisted that Abraham guarantee payment of the note, and he did. Abraham never intended that the beneficial interest should vest in Marie but intended only that "she should hold said property as a straw for him." The mortgage was paid in full by Abraham or by Marie with funds he provided for the purpose. He also expended large sums to improve the property. For a long time Marie has been collecting the rents. On October 2, 1950, there was filed a petition for the appointment of a guardian of Abraham which culminated in his adjudication as an insane person and the appointment of a guardian on February 9, 1951. On March 27, 1951, Marie made a note in the amount of $30,000, payable to the respondent Menard, which was secured by a mortgage on the property. Menard furnished no consideration, but Marie, "with the active and wrongful cooperation" of Menard, "made said note and executed and delivered said mortgage in an effort to so encumber said property as to make it difficult for Abraham J. Charest and his representatives to procure a reconveyance." Abraham died on February 9, 1952, and the residuary clause of his will, dated June 10, 1931, contains a trust for the benefit of the petitioner and their son. Upon the declination of the trustee named, the petitioner was appointed and, "as trustee, is entitled to the possession of said property and to the rents and income."

The petitioner relies upon the well settled principle that when one person pays the purchase price of property and title is taken in the name of another, without more, the beneficial interest enures to the person who paid, or becomes liable to pay, the purchase price, by way of a resulting trust. *Druker* v. *Druker*, 308 Mass. 229, 230. *Collins* v. *Curtin*, 325 Mass. 123, 125. Restatement: Trusts, §§ 440, 456.

Scott, Trusts, §§ 440, 456. Here the petition alleges that Marie gave her own note to the bank for the amount of the purchase price, but there is no allegation that at the time of the conveyance Abraham agreed that he would pay the note. In other words, there is no allegation of a loan of credit. See *Moat* v. *Moat*, 301 Mass. 469, 472; *Cohen* v. *Simon*, 304 Mass. 375, 378; *Carroll* v. *Markey*, 321 Mass. 87, 89. The guaranty of the note by Abraham still left Marie primarily liable. *Saulnier* v. *Saulnier*, 328 Mass. 238, 240. And the subsequent payment of the loan by Abraham or by Marie with his funds cannot avail in the absence of an agreement that this was the contemplated consideration for the conveyance. *Quinn* v. *Quinn*, 260 Mass. 494, 503. *MacNeil* v. *MacNeil*, 312 Mass. 183, 187. Scott, Trusts, § 457. The same is true of subsequent improvements paid for by Abraham. *Saulnier* v. *Saulnier*, 328 Mass. 238, 240. Scott, Trusts, § 454.7.

In *Davis* v. *Downer*, 210 Mass. 573, 575, *Williams* v. *Commercial Trust Co.* 276 Mass. 508, 517, and *Gerace* v. *Gerace*, 301 Mass. 14, 18, there had been a hearing on the merits and the tribunal of fact had found that there was a loan of credit at the time of the conveyance. In the case at bar, which was heard on demurrer, no intendment can be made in favor of the pleader. *Board of Survey of Lexington* v. *Suburban Land Co.* 235 Mass. 108, 112–113. *Arena* v. *Erler*, 300 Mass. 144, 146. *Chandler* v. *Lally*, 308 Mass. 41, 44. See *Carson* v. *Gikas*, 321 Mass. 468, 469–470. The allegation that Abraham intended that Marie should take no beneficial interest but should hold the property merely as a straw is not the equivalent of an agreement between them that she should take no beneficial interest but should hold as a straw. As to the requirements of a writing, see G. L. (Ter. Ed.) c. 203, § 1.

In *Howe* v. *Howe*, 199 Mass. 598, after a hearing on the merits, the judge, as appears from the original papers, found that there was a loan to the person in favor of whom it was decided that there was a resulting trust. See 199 Mass. 598, 601.

We need not consider the respondents' contention that the petitioner, in suing in the right of her husband, cannot set aside transactions made in fraud of his wife. See *Caines* v. *Sawyer*, 248 Mass. 368, 374.

*Decrees affirmed.*

### The Second Case.

In this petition Margaret M. Charest, as administratrix with the will annexed of her late husband Abraham J. Charest, seeks the return of personal property, formerly his, in the possession of the respondent Marie A. St. Onge, and an adjudication that the petitioner has title to capital stock in the respondent Atlantic Pipe & Supply Co., Inc. (hereinafter called Atlantic), formerly in the name of Abraham and now in the name of Marie.

The material allegations of the substitute petition (hereinafter called the petition) are the following: In 1937 Abraham ceased to live with the petitioner. He owned twenty-six of the forty-five shares of the outstanding common stock of Atlantic and two hundred twelve of the two hundred seventy shares of the outstanding preferred stock. He transferred to Marie twenty-five shares of the common stock and two hundred eleven shares of the preferred stock on three dates: September 26, 1936, one hundred thirty preferred; January 1, 1944, one common and nineteen preferred; and February 20, 1945, twenty-four common and sixty-two preferred. Marie paid no consideration. The shares were transferred on the stock transfer books of Atlantic. At the time of transfer Abraham "was beset with difficulties, some of which might have resulted in heavy financial responsibilities," and Abraham "intending that Marie A. St. Onge should have no beneficial interest in said shares, transferred said shares to her for his convenience, intending only to vest legal title in her in an effort to place the said stock beyond the reach and interference of his wife and others who might seek to reach it," and Marie "wrongfully encouraged and procured him to do so, and agreed to hold said stock for him." Abraham "never intended that the

beneficial interest in said stocks should vest in the respondent Marie A. St. Onge, but intended only that, for his convenience, she should hold the title to said stocks for him as a mere straw." Abraham was for many years president, treasurer, and director of Atlantic. He continued to act in those capacities until 1947, when Marie "elected herself," and since 1947 Marie has received compensation as president, treasurer, and director. Since Marie has held the stocks as a straw for Abraham "she has collected" specified amounts totaling $27,062. "Under the law, the petitioner, as administratrix . . . is entitled to the possession of said common and preferred stocks . . . and to the income derived therefrom."

Abraham entrusted Marie "with the safe keeping, for him, of substantial amounts of money, as well as other items of tangible and intangible property, the amount and nature of which are unknown to your petitioner and which the respondent Marie A. St. Onge refuses to divulge, and . . . has, by threats and other means, prevented others who had information with respect thereto from making such information available to the petitioner." (The allegations in the preceding sentence are in paragraph 23 of the petition.)

On October 2, 1950, there was filed a petition for the appointment of a guardian of Abraham which culminated in his adjudication as an insane person and the appointment of a guardian on February 9, 1951.

"Demand for the return of the capital stock and other personal property . . . was made" on Marie by the guardian and by the petitioner, but Marie has refused to comply.

The demurrer, which was sustained generally, assigned for causes: (1) failure to state a cause of action; (2) the administratrix stands in the shoes of the testator, and his acts and conduct prevent her maintaining the petition; (3) the administratrix cannot maintain suit for the return of stock and income therefrom in the absence of an allegation that these are necessary for the payment of creditors of the estate; (4) the administratrix cannot avail herself of the testator's failure to obtain compliance with the re-

strictions on the transfer of the stock; and (5) the respondent St. Onge had the beneficial interest as well as the legal title to the stock, since she has collected for her own use the dividends since 1943. The respondents demurred specially to the allegations of paragraph 23 on the ground that they "are too vague and indefinite to state a cause of action."

Taking up the special demurrer to the allegations of paragraph 23, we think that the ground assigned is not good. We have no way of knowing what the trial judge may have thought in this respect. It is apparent that the proof of many facts is within the knowledge of the individual respondent. The substance of this part of the case is that the individual respondent has received for safe keeping money and other personal property of the deceased which she has refused to turn over to his personal representative. We think that an intelligent defence can be made to this part of the petition, vague though it be. A fiduciary relationship is alleged, although not in terms, along with a repudiation of its obligations. *Shea* v. *Shea,* 296 Mass. 143, 146–147. See *Clair* v. *Colmes,* 245 Mass. 281, 284; *Denault* v. *Cadorette,* 298 Mass. 67. Of the general grounds of demurrer, only the first two are applicable to this part of the case. There is no allegation of fraudulent purpose such as is made with respect to the capital stock in Atlantic. The petition, to this extent at least, states a cause of action.

Since part of the petition is good, the demurrer to the whole petition could not be sustained on the ground of failure to state a cause of action. *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479, 484. *Shea* v. *Shea,* 296 Mass. 143, 147. *Broderick* v. *Broderick,* 325 Mass. 579, 582. We indicate briefly certain principles which may arise in a hearing on the merits. In this Commonwealth a husband may dispose of personal property of his in his lifetime without his wife's consent even if his purpose is to prevent her from acquiring any portion of it. *Redman* v. *Churchill,* 230 Mass. 415, 418. *Kerwin* v. *Donaghy,* 317 Mass. 559, 571. *National*

*Shawmut Bank* v. *Cumming*, 325 Mass. 457, 461.[1]  The transaction, however, must be a real one and not testamentary in effect.  *Kelley* v. *Snow*, 185 Mass. 288, 299.  *Roche* v. *Brickley*, 254 Mass. 584, 588.  *Kerwin* v. *Donaghy*, 317 Mass. 559, 572.  A different question is presented when the husband's purpose is to anticipate a decree for support of the wife.  *Livermore* v. *Boutelle*, 11 Gray, 217.  *Chase* v. *Chase*, 105 Mass. 385.  *Doane* v. *Doane*, 238 Mass. 106, 112.  *Caines* v. *Sawyer*, 248 Mass. 368, 374.  But "relief is not denied to a party to a conveyance claimed to be fraudulent as to creditors if he can make out his case without reference to the fraudulent elements in the facts, in a suit to which no defrauded creditor is a party."  *O'Gasapian* v. *Danielson*, 284 Mass. 27, 34, and cases cited.

Here the actually innocent wife is proceeding in the right of her husband's estate.  Even if she could be affected by any fraudulent purpose of her husband, which allegedly was in part against creditors and in part against her, she is entitled to try to prove her case without reliance upon any fraud.  *Kerwin* v. *Donaghy*, 317 Mass. 559, 573.  See *Ross* v. *Ross*, 329 Mass. 644, 648.

*Decrees reversed.*

---

[1] The law chivalrously allows a wife a similar right.  *Kelley* v. *Snow*, 185 Mass. 288, 299.  *Roche* v. *Brickley*, 254 Mass. 584, 588.  *Malone* v. *Walsh*, 315 Mass. 484, 490–491.