NEIL J. KENNEDY *vs.* GERTRUDE S. INNIS, administratrix, & others.[1]

Middlesex. November 6, 1958. — May 14, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Trust,* Resulting trust. *Real Property,* Straw. *Joint Enterprise. Words,* "Straw."

Evidence justified findings that upon a purchase of a tract of land one, who was the grantee in the deed from the seller and who gave a second mortgage to the seller for a part of the purchase price and a first mortgage to two other persons who contributed a substantial portion of the purchase price, did not become the beneficial owner of the tract but was merely a straw holding the title on a resulting trust for such two contributors and for himself and three fellow employees of his who contributed some money and agreed to contribute more by monthly payments to the venture of purchasing and developing the tract on the basis that the four employees were to have no beneficial interest therein until they had paid in their proportionate shares of the purchase price notwithstanding that a part of their contributions was used to pay the balance of the purchase price; that upon the four employees,

---

[1] On motion Gertrude S. Innis, widow of Robert L. Innis, Robert B. Innis, and Elizabeth L. Davis, heirs at law of Robert L. Innis, were joined as parties respondent.

ceasing to make their monthly payments and abandoning the venture the entire beneficial interest belonged to the remaining two contributors holding the first mortgage; and that upon an assignment by one of the two of his interest to the other the latter became the sole beneficial owner.

PETITION IN EQUITY, filed in the Probate Court for the county of Middlesex on November 18, 1955.

The case was heard by *Monahan, J.,* on a master's report.

*Charles E. Cunningham, (James L. Foster* with him,) for the petitioner.

No argument nor brief for the respondents.

COUNIHAN, J. This is a petition brought in the Probate Court to establish ownership in land in Billerica. The petition, answers and counterclaim of the respondents were referred to a master who after hearing filed a report. No motion was made to recommit the report and no objections to it were filed by the petitioner. No evidence before the master is reported. The report upon motion was confirmed by the judge. Thereupon a final decree was entered adjudging that the land which was the subject of the controversy was the property of Robert L. Innis, hereinafter called Innis, at the time of his death (the date of which does not appear). The matter comes here upon the appeal of the petitioner from the final decree. There was no error.

For a better understanding of this case we think it advisable to set forth a summary of the pleadings. In his petition Neil J. Kennedy, hereinafter called Kennedy, alleged that on September 4, 1929, for consideration he purchased from Isedor A. Johnson (hereinafter called Johnson), and his wife Hilda, a large tract of land in fee in Billerica, particularly described in the petition, and that a deed of this property to him was duly recorded on September 5, 1929, in the Middlesex North District registry of deeds in book 781, page 73; that on September 4 he mortgaged that land to Innis and Dougal McLennan, hereinafter called McLennan, to secure a note to Innis and McLennan for $7,000, payable on demand; that on the same day he mortgaged the property to Johnson to secure a note to Johnson for

$4,000 payable in four months; that on March 1, 1930, Innis gave him a partial release of the $7,000 mortgage on a part of the land; that on the same day Innis acting as agent for him sold this parcel of land to one Martin and his wife for $5,000; that Innis received the purchase price out of which he paid the Johnson mortgage and was to apply the balance of the purchase price on the mortgage of $7,000 held by Innis and McLennan; and that thereafter Innis acting as agent for him received moneys for rentals of part of the property, from the sale of standing hay, stone and gravel, and from sales of several lots of land, all on the understanding that such moneys would be applied on the $7,000 mortgage note given by him to Innis and McLennan.

Kennedy in his petition sought only an accounting between the estate of Innis and himself, and prayed that a decree be entered establishing the amount due on the mortgage note for $7,000 given by him to Innis and McLennan. He also prayed that he be allowed to pay such sum of money as might be found due on the mortgage note and that the administratrix of the estate be ordered to discharge the mortgage.

The answer of the administratrix of Innis denied that Kennedy purchased the whole or any part of the real estate described in the petition but said that this real estate was purchased by her husband, Innis, and that title was taken in Kennedy's name as a straw. She admitted that Kennedy gave a note of $7,000 secured by a mortgage to Innis and McLennan but said that the mortgage was for the purpose of protecting the purchase of the real estate by Innis. She admitted other allegations of the petition relative to the sales of parcels of this land, standing hay, stone and gravel, and rentals. A part of the receipts of money on these transactions was used to pay off the Johnson mortgage of $4,000. All other money was retained by Innis as the sole owner of this real estate. She admitted the preparation of a plan dividing this real estate into several parcels but said that the plan was prepared and drawn at the direction and expense of Innis. She denied that Innis ever acted as an

agent of Kennedy and alleged that at all times he was acting as owner of this land. The answer and counterclaim of the other respondents were substantially the same as the answer of the administratrix. It appears from the docket of the Probate Court that letters of administration were granted the administratrix of Innis on March 9, 1954.

The issue before us is whether Kennedy was the real owner of the land in controversy or whether he was acting as a straw for Innis and McLennan, when he acquired title, and thus held the real estate upon a resulting trust for the benefit of Innis and McLennan. Innis subsequently acquired all the interest of McLennan in this land.

The findings of the master show that Innis and McLennan agreed to purchase from Johnson a large tract of land in Billerica for $12,000. Kennedy was an employee of Innis, and an intimate friend who at that time or sometime later had lived with Innis and his family for several years. On or about September 4, 1929, Innis asked Johnson to prepare a deed of this tract of land to Kennedy as grantee for the reasons that Kennedy was an employee of Innis and also that the wives of Innis and McLennan would be relieved of the necessity of signing deeds and mortgages of this property in the future. Mention was also made that McLennan was involved in marital difficulties. On the same day Innis and McLennan executed and delivered a note for $7,000 to the Billerica Trust Company, secured by a mortgage of certain other land and buildings owned by Innis and McLennan and occupied by Innis and his family. This $7,000 inferentially was used to pay Johnson part of the purchase price of said land. On the same day Innis and McLennan caused Kennedy to give Johnson a note for $4,000 secured by a second mortgage on the granted premises. The balance of $1,000 of the purchase price was paid in the manner hereinafter described. At the time of the purchase, Kennedy executed and delivered to Innis and McLennan a note for $7,000 secured by a first mortgage on the granted premises "to protect the investment of $7,000 made by Innis and . . . McLennan."

About August 29, 1929, an oral agreement was reached among Innis, McLennan, Kennedy and three other persons, the last four being employees of Innis or McLennan, whereby each put in the sum of $300 making a total of $1,800 which was deposited in the Billerica Trust Company in the name of Kennedy. He withdrew $1,000 and it was paid to Johnson as the balance of the purchase price. By the terms of this oral agreement each of the four employees was to pay into this account which was called "Crosby Gardens" $15 monthly until each had paid his proportionate share of the purchase price. Each of these four paid in $15 each month for seven months or a total of $105 each. At the end of seven months, they discontinued these payments and abandoned the venture. The master found that no partnership existed among the six persons who entered into the oral agreement, but that, "[a]t the most, it was a joint venture."

In 1945 McLennan released his interest in such property to Innis and since then he died.

In 1933 and in 1940 an accord and satisfaction was reached between Innis and two of the four who made monthly contributions, viz., John and Archibald McLennan, but no part of "their investment" was ever repaid to Kennedy or to one Kelley, the fourth employee.

Innis and McLennan had the land surveyed and plotted into house lots. They constructed an office on the property and handled all sales of various parcels which were sold off. In the early thirties, Innis constructed homes on some of the lots and sold them. On March 1, 1930, Innis sold a lot presumably with a building on it to one Martin and his wife for $5,000. He paid $4,000 of this money to discharge the second mortgage to Johnson.

Taxes for 1930 were paid out of the "Crosby Gardens" account, the money being drawn from that account by Kennedy. Innis paid $3,117.62 in taxes through 1951 and no taxes have been paid since then.

Innis received $875 from the sale of hay and rentals and $3,750 from the sale of vacant lots, which he retained for his own benefit.

The mortgage note of $7,000 given the Billerica Trust Company by Innis and McLennan on other property owned by them was paid off by Gertrude S. Innis on June 22, 1954, and that mortgage was discharged.

The sum of $1,074.65 from money in the Billerica Trust Company was paid out as expenses of the venture through October 28, 1930, and at the time of the hearing the balance in the "Crosby Gardens" account was only $1.87. Kennedy signed all deeds in connection with the sales of the several lots arranged by Innis and in some instances he was paid $5 for acknowledging his signature before a notary public.

The report as to which no objections were made does not disclose any demand by Kennedy upon Innis for any interest in this property prior to the death of Innis.

It is settled that, when a person pays the purchase price of property and takes title in the name of another, without more, the beneficial interest in the property enures to the person who pays the purchase price, by way of resulting trust. *Collins* v. *Curtin*, 325 Mass. 123, 125. The probate judge must have inferred from the report of the master and we likewise infer that when Kennedy acquired title he was acting as a straw for Innis and McLennan and the four other employees including himself. The term "straw" has been described as meaning a person who holds a naked title for the benefit of another. See *Sandler* v. *Scullen*, 290 Mass. 106; *Cohen* v. *Simon*, 304 Mass. 375, 377; *Collins* v. *Curtin*, 325 Mass. 123, 125. Kennedy as such a straw was holding this real estate upon a resulting trust for Innis and McLennan and the four employees, including himself, who contributed money to the venture. See *Frank* v. *Frank*, 335 Mass. 130; Scott, Trusts (2d ed.) § 456.2; Restatement: Trusts, § 440.

It is true that Kennedy and the five others put into the venture before it started the sum of $300 each and Kennedy and three others further agreed to pay $15 a month until they had paid their proportional share of the purchase price. After seven months the four employees discontinued these

payments and abandoned the venture. Although part of their original payments of $300 each was used to pay part of the purchase price, the balance of their payments was used to pay for the expenses of developing the land purchased. When these four abandoned the venture the entire beneficial interest in this land belonged to Innis and McLennan upon a resulting trust, and when McLennan assigned his interest to Innis he became the sole beneficial owner of the real estate. This is borne out by the absence in the report of any claims or demands on either of them by Kennedy before they died.

A resulting trust must be held to have been established even though Kennedy contributed to the $1,000 paid from the Crosby Gardens account as part of the purchase price and also signed a note to Johnson for $4,000 secured by the second mortgage. The real situation is further demonstrated by the finding of the master that the reason that title was taken in the name of Kennedy was that he was an employee and friend of Innis and that Innis and McLennan desired to avoid the necessity of having their wives sign deeds and mortgages in the future, together with the fact that McLennan was having marital difficulties with his wife. It is also plain that Kennedy and his fellow employees were to have no beneficial interest in the real estate until their contribution of $15 monthly amounted to their proportionate share of the purchase price. This was never accomplished because they discontinued their payments and abandoned the venture. Kennedy is the only one of the four who now claims any interest in this real estate.

We construe the findings of the master to mean that the $405 advanced by Kennedy to Innis and McLennan was an investment in the joint venture or a loan to make up the full purchase price. *Howe* v. *Howe,* 199 Mass. 598, 601. *Collins* v. *Curtin,* 325 Mass. 123. See *Checovich* v. *Checovich, ante,* 71, Scott, Trusts (2d ed.) § 448.

Similar principles of law apply to that portion of the purchase price represented by the note of $4,000 and the second mortage to Johnson securing it. No express agreement is

necessary between the parties to prove that Innis and McLennan assumed responsibility for the payment of this obligation which was subsequently paid by Innis. Scott, Trusts (2d ed.) § 456.2. We recognize that nothing done after the completion of the purchase effects the creation of a trust. *Quinn* v. *Quinn,* 260 Mass. 494, 503. *Dwyer* v. *Dwyer,* 275 Mass. 490, 494. *Epstein* v. *Epstein,* 287 Mass. 248, 253. *Saulnier* v. *Saulnier,* 328 Mass. 238. However, the manner in which the transaction was subsequently treated by Kennedy and Innis is significant of their understanding of its nature. *Checovich* v. *Checovich, supra.*

One of the prayers of the petitioner was that a decree be entered establishing the amount due on the $7,000 mortgage given by Kennedy to Innis and McLennan. Inasmuch as Kennedy signed the note for $7,000 and the mortgage securing it in the circumstances herein described, he may be liable on the note in the hands of a bona fide purchaser for value. The decree therefore should be modified to provide for the discharge of that mortgage and the cancellation of the note.

*Decree as modified affirmed.*