PATRICK F. MURPHY *vs.* LOUISE ROBINSON McKENZIE, individually and as trustee.[1]

Suffolk.    December 9, 1972. — November 20, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Trust,* Resulting trust.  *Equity Jurisdiction,* Plaintiff's clean hands.

Where a defendant in a suit in equity took title to certain real estate but the consideration was paid by the plaintiff and by the proceeds of a mortgage given by the defendant to a bank, with the plaintiff making the subsequent mortgage and tax payments, a trust resulted in favor of the plaintiff entitling him to a conveyance of the property from the defendant [555-556]; and the clean hands doctrine did not bar the plaintiff from compelling such a conveyance where his motive in

---

[1] In her capacity as trustee, she is named as Louise Robinson, trustee of Louise Robinson Realty Trust.

using the defendant was to keep the property out of the reach of his wife and to avoid a potential federal tax lien [555, 556-560].

BILL IN EQUITY filed in the Superior Court on June 2, 1970.

The suit was heard by *Dwyer, J.*

*Joseph M. Cohen* for the defendant.

*Francis X. Moran* for the plaintiff.

GOODMAN, J.   This bill in equity seeks to establish a resulting trust of real estate held by the defendant as trustee of Louise Robinson Realty Trust. The trial judge declined to order a conveyance of the real estate to the plaintiff but did enter a decree awarding the plaintiff $20,641 for sums he had contributed toward the purchase of the real estate and monies he had advanced for mortgage payments and taxes. Both parties appealed. The trial judge adopted as a report of material facts the findings of fact made in his "Findings, Rulings and Order for Decree." The evidence is reported.

The property was purchased on May 29, 1969, and conveyed by the seller to the defendant. The purchase price was $40,000, of which $30,000 was paid from the proceeds of a mortgage of the property given by the defendant to a bank; the remainder was furnished by the plaintiff. After title was passed, the mortgage and tax payments also came from the plaintiff.

To counter the plaintiff's contention that the defendant took title on the plaintiff's behalf and that a resulting trust arose for his benefit, the defendant sought to prove that she had bought the property for her own benefit and had subsequently agreed orally with the plaintiff to sell it to him for $60,000. She testified that the monies advanced by the plaintiff prior to the agreement had been owed to her in connection with other matters. She also raised the defense of "unclean hands."

The trial judge found as matter of fact that the defendant's version of the arrangement was untrue; that the plaintiff and the defendant "did enter into an oral agreement whereby the [defendant] was to take title to the

property for and in behalf of the [plaintiff] with the understanding that the [defendant] would reconvey to the [plaintiff] or his nominee upon the assumption of the mortgage by the [plaintiff] . . . [and] [t]hat the [plaintiff] and the [defendant] agreed that the latter would obtain a purchase money mortgage in the amount of thirty thousand dollars ($30,000) which the [defendant] did obtain and became personally indebted thereby. A part of the agreement was that the [plaintiff] held himself responsible for the mortgage payments until such time as he was financially able . . . [to pay] the entire mortgage and discharg[e] it." At the hearing the plaintiff "conceded that he did not take title in his own name because he did not want his wife to reach the property for her support . . . [and] that he was having tax trouble with the Internal Revenue Service, and that he wanted to avoid an Internal Revenue Service lien on the property . . . ." The trial judge found that the parties "were fully aware of [plaintiff's] purpose of circumventing the interests of his wife and the Internal Revenue Service as stated above."

On the basis of these findings of fact, we hold (contrary to the trial judge's rulings of law) that (1) the plaintiff established a resulting trust of the real estate in question and (2) he is not barred by the clean hands doctrine from compelling a conveyance by the defendant.

1. On the facts found by the trial judge, a resulting trust arose as a matter of law "within the well recognized principle of equity jurisprudence, that where one buys and pays for real estate, but the conveyance of the title is to another, a trust results in favor of the one who pays the consideration . . . ." *Howe* v. *Howe,* 199 Mass. 598, 600 (1908). Restatement 2d: Trusts, § 440, p. 393. This is so although "the consideration paid was not out of funds on hand by the original *cestui que trust* but from the proceeds of money borrowed by him even from the trustee . . . ." *Howe* v. *Howe, supra,* at 601. Here the purchase price was furnished in part directly by the plaintiff and in part from proceeds of a mortgage of the property in question given by the defendant to the bank, the plaintiff agreeing, as the

trial judge found, to hold "himself responsible for the mortgage payments." The defendant's obligation to the bank was thus, in effect, a loan of credit to the plaintiff, the actual purchaser. The transaction between the plaintiff and the defendant stands no differently from a loan of money from the defendant (the grantee of the record title) to the plaintiff, on whose behalf the defendant took title, to enable the plaintiff to pay the purchase price. *McDonough* v. *O'Niel,* 113 Mass. 92, 95 (1873). *Howe* v. *Howe,* 199 Mass. 598, 601 (1908). *Gerace* v. *Gerace,* 301 Mass. 14, 16 (1938). *Collins* v. *Curtin,* 325 Mass. 123, 125 (1949). Bogert, Trusts and Trustees (2d ed.) § 455, p. 532. It is essentially the same as a purchase money mortgage given to a seller by a grantee of the record title whom the beneficial owner agrees to exonerate. *Davis* v. *Downer,* 210 Mass. 573, 575 (1912). *Williams* v. *Commercial Trust Co.* 276 Mass. 508, 517 (1931). *Gerace* v. *Gerace,* 301 Mass. 14, 18 (1938). *Kennedy* v. *Innis,* 339 Mass. 195, 201-202 (1959). *Shea* v. *Venuti,* 346 Mass. 780 (1964). Scott, Trusts (3d ed.) § 456.2, p. 3391. Restatement 2d: Trusts, § 456, comment d, p. 428 and illus. 4. Cf. *Carroll* v. *Markey,* 321 Mass. 87, 89 (1947). From the findings of the trial judge, fully supported by the evidence, it appears, as the Supreme Judicial Court said in *Williams* v. *Commercial Trust Co.* 276 Mass. 508, 517 (1931), "that the purchase was entirely financed by the . . . [plaintiff], that expenditures for the acquisition and maintenance of the property were all made from money belonging or credit lent to the . . . [plaintiff]. Such a situation gives rise to a resulting trust." The plaintiff therefore was entitled to a conveyance, subject however to the defendant's protection against the risk of loss. Scott, Trusts (3d ed.) § 456.2, p. 3393. Bogert, Trusts and Trustees (2d ed.) § 455, p. 535.

2. The clean hands doctrine does not bar the plaintiff's recovery in this case. It is true, as the trial judge found, that the plaintiff conceded he was motivated in this transaction by a desire to keep the property out of the reach of his wife and to avoid a tax lien. But the motivation was immaterial to the establishment of the resulting trust; that arose as a

matter of law on the operative facts proved by the plaintiff. And these did not include an express agreement like that on which the plaintiff in *Caines* v. *Sawyer,* 248 Mass. 368, 374 (1924) (cited by the defendant) had to rely in order to prove that his gratuitous transfer to the defendant, absolute on its face and therefore presumptively a gift (Scott, Trusts [3d ed.] § 405, p. 3219; *Gould* v. *Lynde,* 114 Mass. 366 [1874]), was subject to an express trust embodied in that agreement. The distinction is explained in *Bohaker* v. *Koudelka,* 333 Mass. 139, 142-143 (1955), in which it was argued that "the petitioner [wa]s not entitled to relief because the conveyance to the testatrix was a fraud on his legal wife, Lulu, and hence he d[id] not come into court with clean hands." The court said (p. 143): "It is true that the judge found that the petitioner caused the property to be conveyed to the testatrix to keep the land free from any claim or interference by Lulu. We assume that as to her the conveyance was fraudulent. . . . However, since no rights of Lulu are involved in this suit, the petitioner can prevail if he can make out his case without reference to the fraudulent elements in the facts. *Lufkin* v. *Jakeman,* 188 Mass. 528, 531-533. *O'Gasapian* v. *Danielson,* 284 Mass. 27, 34. *Charest* v. *St. Onge,* 332 Mass. 628, 635. In his petition he averred that he paid the entire consideration for the property and caused title to be taken in the name of the testatrix. By proof of these averments, without more, he established his case. The petitioner is not attempting to enforce an express agreement which discloses on its face the fraud in the transaction as in *Caines* v. *Sawyer,* 248 Mass. 368, 374, on which the respondent relies."[2] The court further cited *Gerace* v. *Gerace,* 301 Mass. 14 (1938), as being "to the same effect." In that case, as in this, the plaintiff proved a loan of credit; the master's findings also established that he was bankrupt and that his motive in taking title in another's name was to avoid creditors. The

---

[2] The court apparently did not think it significant that the record in that case (as in this case) showed that the plaintiff's motive to defraud his wife was first elicited on direct examination by his attorney.

court said (p. 19), "He made no conveyance of property in fraud of creditors which he is seeking to avoid, so that cases like *Verne* v. *Shute,* 232 Mass. 397, *Dunne* v. *Cunningham,* 234 Mass. 332, and *Caines* v. *Sawyer,* 248 Mass. 368, do not apply. If we assume that the plaintiff's purpose was fraudulent as to creditors, nevertheless, where, as here, he can show a *prima facie* right to the establishment of a resulting trust in the property purchased, without developing the alleged fraud in the transaction, the court will not permit the defendants to set up a fraud against third persons as a defence." See *Williams* v. *Commercial Trust Co.* 276 Mass. 508, 518 (1931) (also involving a loan of credit and a resulting trust which the court recognized as binding on the parties, although motivated by a desire to circumvent a statutory restriction on bank holdings); *Lufkin* v. *Jakeman,* 188 Mass. 528, 532 (1905) (in which the court answered in the negative the question "whether a common transaction, the legal effect of which as between themselves is plain, shall lose its character in any particular because one of the parties, in making the arrangement, acted, with the knowledge of the other, from a motive which was fraudulent as against a third person"); *Magee* v. *Magee,* 233 Mass. 341, 346 (1919); *Charest* v. *St. Onge,* 332 Mass. 628, 635 (1955).[3]

The defendant in her brief treats the plaintiff's motive to avoid a lien by the Internal Revenue Service on the same

---

[3] The rule in these cases that a resulting trust, though intended to defraud creditors, will be enforced as between the parties is a minority view. See Pomeroy, Equity Jurisprudence (5th ed.) § 401a, n. 20, p. 110. Any difference in treatment in this respect between an express trust imposed on a gratuitous conveyance by agreement and a resulting trust arising by operation of law has been criticized by Professor Scott who is of the opinion that the only "question is whether the policy against permitting the unjust enrichment of B [the transferee] is outweighed by the policy against assisting a wrongdoer." Scott, Trusts (3d ed.) § 444, p. 3354; see § 63, p. 625, § 422.5, p. 3269; Restatement 2d: Trusts, § 422, comment f, p. 366; Bogert, Trusts and Trustees (2d ed.) § 463, pp. 638-639. See Corbin, Contracts, §§ 1460, 1464. But express trusts have also been enforced, though in fraud of creditors when "[n]o fraud was practised upon . . . [the defendant;] she cannot rely upon the alleged attempt . . . to defraud a third person." *Zak* v. *Zak,* 305 Mass. 194, 196 (1940). *Levy* v. *Levy,* 309 Mass. 486, 491 (1941). Cf. *Kavanaugh* v. *Kavanaugh,* 279 Mass. 238, 240 (1932). See generally Chafee, Some Problems of Equity, pp. 5-12 (History of the Maxim); pp. 16-18 (Suits to Undo Completed Transactions in Fraud of Creditors or for Evading Taxes) and pp. 33-40.

footing as his desire to keep the property out of his wife's reach. The trial judge also makes no distinction between the two in his rulings of law. This is in accord with *Kerwin* v. *Donaghy,* 317 Mass. 559 (1945), in which property was placed in the defendant's name by her father. "His purpose was to defraud the Federal government by pretending to divide his income so as to avoid large surtaxes" (p. 562). The court said (p. 573), "Even if the actually innocent wife could be affected by the fraudulent purpose of her late husband in holding those stocks in the name of his daughter Gladys, the wife has made out her case without reliance upon any fraud [citing cases]." See *Monahan* v. *Monahan,* 77 Vt. 133, 140-142 (1904), cited in *Gerace* v. *Gerace,* 301 Mass. 14, 19 (1938) and *Rugo* v. *Rugo,* 325 Mass. 612, 619 (1950), in which a resulting trust was enforced despite the defense of unclean hands by a plaintiff who had taken mortgages in his son's name; his purpose was to avoid local taxation on the mortgages which, as the dissent pointed out, subjected him to "a heavy penalty under V. S. 414 . . . ." (p. 150) However, the majority made no reference to the illegality and discussed the unclean hands defense only in terms of "fraud" (p. 142). See also *Rudolph* v. *Gersten,* 100 Ill. App. 2d 253, 267-270 (1968).

This court will not give its aid to the consummation of an illegal transaction. See *Perkins* v. *Hilton,* 329 Mass. 291 (1952), in which the court refused to recognize a conveyance, made pursuant to a trust, the effect of which was to permit the mother of a veteran to obtain veterans' benefits in violation of the servicemen's readjustment act. See also *Fouquette* v. *Millette,* 310 Mass. 351, 354 (1941). Cf. *Williams* v. *Commercial Trust Co.* 276 Mass. 508, 518 (1931); *New York, New Haven & Hartford R. R.* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482 (1933); *Braga* v. *Braga,* 314 Mass. 666, 673 (1943); *Scola* v. *Scola,* 318 Mass. 1, 8-9 (1945). Contra, *Johnson* v. *Yellow Cab Co.* 321 U. S. 383, 392-393 (1944), in which the court in the circumstances rejected the contention that an injunction would facilitate a violation of law and held that even if that were the case (which was doubtful) "federal agencies exist which are

charged with responsibilities to institute appropriate pro-
ceedings . . . in federal tribunals." Justice Frankfurter dis-
sented stating (p. 402): "But where the relief sought is not
as to something past and collateral, but where it is the very
means . . . for completing an outlawed transaction, a court
of equity should withhold its aid and not become the
promoter of wrongdoing."

In this case the rejection of the unclean hands defense
finds support in both the majority and minority opinions in
the *Johnson* case. Here the plaintiff "does not seek the aid
of the court in the execution of the fraudulent scheme."
*Paula* v. *Soares,* 304 Mass. 450, 451 (1939), quoting *Mur-
phy* v. *Moore,* 228 Mass. 565, 568 (1917). Indeed, it does not
appear that the Internal Revenue Service was in any way
defrauded or hindered (*Carll* v. *Emery,* 148 Mass. 32
[1888]; see *Magee* v. *Magee,* 233 Mass. 341, 346 [1919];
Scott, Trusts, [3d ed.] § 444, p. 3353) or that the plaintiff
was otherwise incapable of meeting his tax obligations.
*Cram* v. *Cram,* 262 Mass. 509, 512 (1928). See *Harvey* v.
*Varney,* 98 Mass. 118, 120 (1867). A conveyance to the
plaintiff of this property may help rather than hinder
whatever claims the Internal Revenue Service may have.

The decree is reversed and a new decree is to be entered
ordering the defendant, in whatever capacity she holds the
real estate in question,[4] to convey it by a good and sufficient
quitclaim deed on condition that the plaintiff obtain and
deliver to the defendant a discharge of the note and
mortgage under which the defendant is obligated to the
bank (see *Kennedy* v. *Innis,* 339 Mass. 195, 202 [1959];
Scott, Trusts [3d ed.] § 456.2, p. 3392). The decree shall
also provide that the defendant individually shall pay to
the plaintiff the sum of $2,216.[5]

*So ordered.*

---

[4] The defendant's contention that the beneficiaries of the Louise Robinson
Realty Trust have an interest is without merit. They were not made parties and,
so far as appears, gave no value or otherwise did anything to cut off the plaintiff's
equity.

[5] The trial judge found that this was retained by the defendant from monies
which the plaintiff gave her to apply to mortgage payments.