Fecteau, J.
Plaintiff, Alice B. Richmond, Trustee of the Marvin F. Richmond Trust (Richmond) and judgment creditor of John Carney (Carney), brought this declaratory action against defendant, Jane R. Tan-kenow (defendant), record grantee of real property at 40 Westwood Drive, Worcester, to reach and apply Carney’s alleged interest in the property. Richmond now seeks entry of summary judgment pursuant to Mass.R.Civ.P. 56(c). In substance, she claims that the defendant holds title as trustee of a resulting trust for Carney’s benefit that can be reached and applied to satisfy her unsatisfied judgment. For the following reasons, this court agrees and ALLOWS her motion.[2]

BACKGROUND

[3]

The undisputed material facts as established by the summary judgment record are set forth below.
On or about June 2, 1997, Richmond became a judgment creditor of Carney in the amount of $285,000. See Alice B. Richmond, Trustee oj the Marvin F. Richmond Trust v. Carney, Worcester Civil Action No. 95-2624 (the “prior action”).[4] The judgment has not been fully satisfied.
On or about April 23, 1998, Carney made an offer to purchase real estate located at 40 Westwood Drive, Worcester, Massachusetts (the property) valued at $400,000; he provided the deposit and earnest money for the down payment totaling at least $60,000.00. See Exhibit D attached to Richmond’s motion for summary judgment.[5] See also Defendant’s Affidavit in Opposition to Plaintiffs Motion.
On August 19, 1998, title to the property changed hands and the defendant and Carney moved into their new home. Although the defendant is the record grantee, mortgagor and maker of the note in the amount of $350,000 securing the property, Carney pays the mortgage, makes payments on a $25,000 home equity loan, and pays all other expenses associated with the property.[6]
On November 23, 1998, the defendant and Carney executed an Agreement that had both retroactive and prospective implications. Specifically, the Agreement provided in pertinent part that “(the defendant] is the owner of record of [the property] and . . .. Carney is desirous of purchasing said home and living there until he is able to complete the transfer to his own name."[7] The Agreement further provided that from August 19, 1998 — the date of purchase — to August 18, 2000, Carney would be permitted to live at the property so long as he paid the mortgage and all expenses associated with the maintenance of the property, including the taxes, improvements, upkeep, fuel bills, insurance, electricity, gas and “any other payments of any nature that are incurred during the two year period ... At the end of the two year period, . . . Carney shall be entitled to purchase the property for the amount of all unpaid bills and mortgage and shall. . ., discharge [the defendant of all obligations associated therewith.]” (Emphasis added.)[8]
*645 Richmond filed the instant complaint against the defendant on February 23, 1999 to reach and apply Carney’s interest in the property in partial satisfaction of his June 2, 1997 judgment debt. After a hearing on March 6, 1999, this court allowed Richmond’s motion for a real estate attachment on the property in the amount of $282,786.
On October 15, 1999, pursuant to a complaint for contempt filed by Richmond in the prior action, this court (Sosman, J.) ordered Carney to pay Richmond $50,000 towards his judgment indebtedness. Five days later, on October 20, 1999, Carney borrowed $50,000 from his employer, Bridgeport Metal Goods, Inc. (Bridgeport) to satisfy the court order. This was his first payment to Richmond.[9] Thereafter, on October 21, 1999, the defendant and Carney executed an “Amendment to [the] Agreement dated November 23, 1998" whereby the defendant agreed to pay off Carney’s $50,000 obligation to Bridgeport in return for Carney’s agreement to waive his right to purchase the property. (See Exhibit 5 attached to defendant’s opposition.)
Richmond argues that the uncontested facts, stated above, clearly demonstrate that Carney is the true owner of the property, and that the defendant merely holds title to the property as trustee of a resulting trust for his benefit. This court agrees.

DISCUSSION

I. Standard of Review
This court grants summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R 56(c). The moving party bears the “burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party has carried this burden, the onus shifts to the nonmoving party to respond and offer significant probative or admissible evidence identifying a disputed issue of material fact. See McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 437-38 (1989). See also Lalonde v. Eissner, 405 Mass. 207, 209 (1989). Accord Michaelson v. Digital Financial Svcs., 167 F.3d 715, 720 (1st Cir. 1999) (same). If the opposing party demonstrates that there are genuine issues of material fact, summary judgment is inappropriate. Pederson, supra at 17.
Where, as here, the plaintiff also seeks declaratory relief, the rights of the parties should be declared. See 146 Dundas Corporation v. Chemical Bank, 400 Mass. 588, 589 n. 4 (1987) (finding motion judge should declare the parties’ rights even if presented with a motion for summary judgment).
II. Merits of Richmond’s Motion for Summary Judgment
As aforesaid, Richmond’s theory of recovery is that Carney purchased the property having taken title in the defendant’s name solely as a convenience, and not intending a gift. Further, since her judgment has not been satisfied, she argues that as Carney’s creditor, she is entitled to reach and apply his interest in the property. The court’s analysis is twofold. First, based on the undisputed facts, did a resulting trust arise in Carney’s favor as a matter of law with respect to the property? And, if so, is Richmond entitled to reach his interest in the property and apply it in satisfaction of her debt? This court answers both questions in the affirmative.
A. Resulting Trust
It is well settled in the Commonwealth that (1) “where one pays [the consideration] for real estate but the conveyance is to another,” (2) not intending a gift or advancement, “a resulting trust arises in favor of the one who pays the purchase price against the grantee named in the deed.” Davis v. Downer, 210 Mass. 573, 575 (1912) (Rugg, C.J.); Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994). As a general matter, “on account of the improbability of a gift to a stranger, the law implies that the one who holds title, without having paid any value for it, is a trustee for the one who in fact paid the purchase price,” notwithstanding the statute of frauds. Howe v. Howe, 199 Mass. 598, 602 (1908) (Rugg, J.) (emphasis added); Davis, supra at 575. Aresulting trust is “based upon the presumption that he who supplies the purchase price intends that the property bought shall inure to his own benefit and not that of another, and that the conveyance is taken in the name of another for some incidental reason.” Dwyer v. Dwyer, 275 Mass. 490, 494 (1931). See generally, Restatement (2d) Trusts, Introductory Note to §440, at 391-92 (1959 Ed.).
1. Consideration for Purchase of Property
Consideration for the purchase of property can come not only from the actual purchaser’s own funds, but also from the proceeds of money borrowed by him, even indirectly from the trustee. Murphy v. McKenzie, 1 Mass.App.Ct. 553, 555-56 (1973). In Murphy, the plaintiff sought to establish a resulting trust of real estate held by the defendant. There, a third party conveyed a parcel of real estate to the defendant for $40,000 of which $30,000 was paid from proceeds of a mortgage given by the defendant to a bank. The plaintiff paid the remainder of the purchase price. After title passed, and pursuant to an oral agreement, the plaintiff paid and held himself responsible for the mortgage and tax payments on the property. Id. at 554. On these facts, the trial court declined to impose a resulting trust. The Appeals Court reversed finding that a resulting trust arose as a matter of law. Id. at 555. The court further concluded that,
*646 the defendant’s obligation to the bank was thus, in effect, a loan or credit to the plaintiff, the actual purchaser. The transaction between the plaintiff and the defendant stands no differently from a loan of money from the defendant (the grantee of the record title) to the plaintiff, on whose behalf the defendant took title to enable the plaintiff to pay the purchase price.
Id. at 556. See also Crowell v. Stefani, 12 Mass.App.Ct. 966, 967 (1981) (affirming trial court imposition of resulting trust). Furthermore, a resulting trust “must arise, if at all, at the time of the execution of the deed.” Fortin, 416 Mass. at 789.
Here, Richmond has introduced uncontroverted evidence showing that Carney contributed the deposit and earnest money, totaling at least $60,000, towards the purchase of the property, and has agreed to in writing (and continues to) pay the mortgage, a home equity loan and all expenses associated with the property, including property taxes, despite title being taken in the name of the defendant. The defendant also does not seriously dispute that Carney purchased the property.[10] Moreover, she has introduced no evidence demonstrating that she provided anything towards the purchase of the property at the time of the execution of the deed.
Based on these facts, and in accordance with McKenzie, this court finds that Carney entirely financed the purchase of the underlying property. See Carroll v. Markey, 321 Mass. 87, 89 (1947) (declining to impose resulting trust, and finding no evidence of loan of credit for payment of purchase price where plaintiff did not enter into an agreement with grantee at the time of conveyance to become responsible for payment of mortgage). The defendant’s taking both title and mortgage in her name alone were nothing more than “a loan or credit,” that conveniently advanced his acquisition.
2. Intention to Make a Gift
As a general matter, whether a person intends to make a gift is a question of fact that revolves around an examination of all the surrounding circumstances. See Herwitz v. Herwitz, 356 Mass. 734 (1969); Anderson v. Salminen, 333 Mass. 239, 241 (1955) (finding no intention to make gift where plaintiff seeking property under theory of resulting trust). In some instances, however, particularly where the one who pays the consideration is under a natural or legal obligation to provide for the record grantee, the law will presume an intent to make a gift. See Krasner v. Krasner, 362 Mass. 186, 189(1972). But see Bouhaker v. Koudelka, 333 Mass. 139, 142 (1955) (where parties lived together were not married to each other, no presumption of gift).
Here, because the defendant and Carney are not married to each other, there is no presumption of a gift. Id. Thus, to surmount this hurdle, the defendant was obligated to come forward with some evidence demonstrating that Carney otherwise intended the property to be a gift.
This she has not done.
Further, even taking all facts in the defendant’s favor, see Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995), the summary judgment record is otherwise entirely bereft of evidence demonstrating an intent to gift the property to the defendant. In fact, looking at the totality of the presented evidence, the contrary conclusion could be drawn, namely, that there was no such intention.
Specifically, looking at the clear and unambiguous language of the Agreement, which (1) recites that Carney is “desirous of purchasing said home and living there until he is able to complete the transfer to his own name,” (2) obligates Carney to pay all expenses associated with the maintenance of the property, (3) affords him the right to purchase the property, and (4) obligates him to discharge any obligation of the defendant, this court could thus conclude that when he fronted the purchase money, he intended the property to “inure to his own benefit,” and not that of the defendant. There was thus no gift. See Dwyer, 275 Mass. at 494. See also Krasner v. Krasner, 362 Mass. 186 (finding where husband paid all expenses connected with property, no intent to make a gift).
Based on the foregoing, this court concludes that (1) since Carney furnished the entire consideration for the purchase of the property, and (2) because there is no evidence demonstrating an intent to make a gift, the defendant holds title as trustee of a resulting trust for Carney’s benefit. See McKenzie, 1 Mass.App.Ct. at 556, citing Williams v. Commercial Trust Co., 276 Mass. 508, 517 (1931). The question becomes whether Richmond is entitled to reach and apply his equitable interest in satisfaction of her judgment.
B. Reaching and Applying Carney’s Beneficial Interest in the Resulting Trust
Generally, a creditor may reach and apply, “in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the Commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor.” G.L.c. 214, §3(6). “An action to reach and apply is essentially a two step process. The first is the establishment of an indebtedness on the part of the [debtor] to the plaintiff. The second is the process for collecting the debt, when established out of property rights which cannot be reached on an execution.” Springfield Redevelopment Authority v. Garcia, 44 Mass.App.Ct. 432, 436 (1998) (internal quotation marks and citations omitted).
1. Establishment of Indebtedness
Here, it is undisputed that Carney’s indebtedness to Richmond has been established, see Worcester Civil Action No. 95-2624, and that Richmond’s judgment *647 has not been satisfied. The court now examines the process for collecting Richmond’s debt.
2. Process of Collection
Although reach and apply actions seeking the imposition of a resulting trust are typically initiated by the party who actually pays for the underlying property, see e.g. Ryan v. Brodak, Civil Action No. 91-1356, 10 Mass. L. Rptr. 324 (Mass. Super Ct. June 16, 1999); Brodeur v. American Rexoil Heating Fuel Co., Inc., 13 Mass.App.Ct. 939 (1982), individuals not originally privy to the underlying transaction (e.g. creditors such as Richmond), the defendant’s claim to the contrary, may properly reach property held on a resulting trust. See e.g. Lyons v. Urgalones, 189 Mass. at 430 (creditor entitled to reach debtor’s interest in property standing in name of another). See also Bresnihan v. Sheehan, 125 Mass. 11, 15 (1878) (finding husband’s creditor could reach realty titled solely in wife’s name to satisfy debt where wife had purchased property partially with husband’s wages but without husband’s knowledge). See generally, J. Nolan and L. Sartorio, Equitable Remedies, §384 and n. 10 at 529 (1992 ed.); W. Fratcher, Scott on Trusts, §407 at 18-19 (4th ed. 1989) (where resulting trust arises on a conveyance inter vivos, “it arises in favor of the settlor, and can be reached by his creditors”); G. Bogert, Trusts & Trustees, §463 at 388-90 (2nd ed. 1991).[11]
The underpinnings of the Lyons case are similar to the facts of the instant case and warrant discussion. In Lyons, the plaintiff sued the defendant, the record grantee of real estate, to recover on a debt owed by another (debtor) who was alleged to be the real owner of the property. The reported evidence revealed that the debtor, and not the defendant, furnished the consideration to purchase the property, and that the defendant was merely the record grantee. 189 Mass. at 428. The court, sustaining the plaintiffs exceptions and reversing the trial court, found that at the time of the purchase, the debtor was vested with legal title, and entitled to a present conveyance; the defendant merely held the property as trustee for the debtor’s benefit. As such, the plaintiff could properly reach the underlying property in satisfaction of his debt. Id. at 429-30.
Similarly, in this case, Richmond as judgment debtor, brought the instant action against the defendant, the record grantee, to recover on a debt owed by another, Carney. As has been established above, Carney paid the entire consideration for the purchase of the property with title merely being taken in the defendant’s name. As such, and in accordance with Lyons, this court finds that Carney, as the true owner of the property, has a legal right to immediate possession that may properly be reached and applied in satisfaction of Richmond’s debt.
3. Effect of Defendant's Contributions
The defendant argues, however, that even if the court finds that Carney is the true owner of the property, her subsequent contributions, in the nature of her payment for improvements and her discharge of Carney’s indebtedness to Bridgeport (and his concomitant release of any interest in the property) created in her legal title that cannot be destroyed. Her arguments miss the mark.
a. Improvements to Property.
It is now well settled that subsequent contributions from the trustee will not off set the equitable nature of the resulting trust. See Gerace v. Gerace, 301 Mass. 14, 19 (1938) (contributions after purchase irrelevant). But see MacNeil v. MacNeil, 312 Mass. 183, 186-87 (1942) (where title held as tenants by the entirety contributions of spouse material).
In Gerace, the plaintiff sued his father, the record grantee, to convey the property to him under a theory of resulting trust. The father counterclaimed to recover the value of his contributions expended in improving the properly. The court found that since “there was no agreement, [and] no records were kept,” the father was not entitled to recover the value of his contributions. 301 Mass. at 19-20.
Here, as in Gerace, there were no formal records, only the defendant’s ad hoc representations of the amounts she expended in the maintenance and improvement of the property. Even assuming that the defendant’s representations are accurate, her claim must still fail as it is clear from the plain language of the underlying Agreement that she had no expectation of recovering the value of such expenditures. Specifically, the Agreement recited in relevant part that “(a]t the end of the two year period, . . . Carney shall be entitled to purchase the property for the amount of all unpaid bills and mortgage and shall. . . discharge [the defendant of all obligations associated therewith].” (Emphasis added.) Absent from this Agreement is any obligation to repay her for the cost of “improvements.” Construing the plain language of the Agreement, this court finds it would thus be improper to repay her for sums for which she did not bargain.
b. $50,000 “gift” to Carney — Repayment of Note
Additionally, the defendant argues that whatever “interest” Carney may have had in the underlying property, it was vitiated by her payment of $50,000, and his concomitant waiver of his right to purchase the property in the November 23, 1999 Amendment to the Agreement. The defendant’s arguments are inconsistent. Either, she was, as she suggests, the owner at all relevant times, in which case she purchased nothing from Carney and her $50,000 payment on his behalf to Bridgeport was nothing more than a taxable gift, or Carney was the owner of the property at the time of the execution of the deed and was ostensibly attempting to circumvent the attachment.
*648 As articulated above, this court has further determined that the reported evidence demonstrated that Carney, and not the defendant, has been the legal owner of the property since the execution of the deed. Furthermore, after providing the defendant with notice and an opportunity to be heard, on March 6, 1999 this court approved Richmond’s request for a real estate attachment on the property. It reasonably follows that as of November 23, 1999 — the time the defendant allegedly gave Carney $50,000 in consideration of his waiver of his right to purchase the property and eight months after the attachment became effective — the defendant had, at a bare minimum, constructive notice of the attachment. See McIntyre, supra at 712.
If, as the defendant contends, she purchased all of Carney’s rights and interest in the property, she did so subject to the attachment in the amount of $282,786. See McIntyre, supra at 712. Moreover, in the alternative, and in light of this court’s finding that she holds title as trustee of a resulting trust, the defendant’s purchase was subject to the trust which had already impressed upon the property. Gerace v. Gerace, 301 Mass. at 18.

ORDER

It is hereby ORDERED that Plaintiff, Alice B Richmond’s motion for summary judgment is ALLOWED.
It is further DECLARED that the defendant, Jane R. Tankenow, holds the property located at 40 Westwood Drive, Worcester, Massachusetts in resulting trust for the benefit of John Carney and that those proceeds or any equity therein, may be reached and applied in satisfaction or partial satisfaction of the judgment entered against John Carney in Alice B. Richmond, Trustee of the Marvin F. Richmond Trust v. John Carney, Worcester Civil Action No. 95-2624.

 It should be noted at the outset that neither party argued whether the underlying purchase of the subject property was tantamount to a fraudulent conveyance as to Richmond. See Casson v. Petrellis, 345 Mass. 275, 276 (1963) (bill to reach and apply on basis of fraudulent conveyance). Failure to argue or allege that the underlying purchase was made in fraud of creditors, however, is not fatal to the decision reached here. See Bresnihan v. Sheehan, 125 Mass. 11, 15 (1878) (bill to reach and apply; no allegation of fraudulent conveyance). Based on the foregoing, this court does not consider whether the purchase of the property was fraudulent. See also Mass.R.Civ.P. 8(b) (fraud must be pled with particularity).

 Mass.R.Civ.P. 9A(b)(5) states in relevant part that “Each motion for summary Judgment shall be accompanied by a concise statement ... of the material facts as to which the moving party contends there is no genuine issue to be tried . . . Each opposition to a motion for summary judgment shall include . . . , a concise statement of any additional material facts as to which the opposing party contends there is a genuine issue to be tried . . . For purposes of the motion for summary judgment, facts contained in the [moving party’s statement of facts] shall be deemed to have been admitted unless controverted [in the opposition for summary judgment!.” Here, Richmond filed a Concise Statement of Facts. The defendant did not controvert these facts. Accordingly, for purposes of the instant motion, this court finds such facts as set forth by Richmond to be admitted and thus undisputed.

 The actual order indebted Carney to Richmond in the amount of $200,000 plus interest at a rate of 12% from September 1, 1995. See Exhibit F attached to Richmond’s Memorandum of Law in Support of Motion for Summary Judgment. The defendant does not, however, deny that Carney is presently indebted to Richmond in the amount of $285,000, and so this court adopts the later figure as an undisputed fact.

 Question 5 of Exhibit D, interrogatories in Worcester Probate Docket No. 93D-3548-DV1, specifically asks if the defendant had “received monies or income in excess of . . . ($1,000.00) other than through either child support or alimony for the period from July 1, 1993 to the present [November 19, 1998], [and if so] please set forth the source of each such state of monies ...” The defendant responded, under oath, that, inter alia, on August 1998, she acquired an interest in property at 40 Westwood Drive, Worcester.
Purchase Price (including closing costs & extras) $410,000
Equity Loan (payments made by John Carney) $ 25,000
Funds from John Carney: $ 15,000
$ 20,000
Mortgage (paid by John Carney) $350,000
The defendant argues that Exhibit D is inadmissible. This court disagrees and finds such statements to be clearly relevant to the issue of who provided the consideration for the property, and is thus admissible. See General Electric Co. v. Board of Assessors of Lynn, 393 Mass. 591, 603 (1984) (defendant’s answers to interrogatories from another case, admissible as relevant evidentiary admissions); Altman v. Masbahi, 1999 Mass.App.Div. 130 n. 2 (1999) (interrogatories propounded in underling action may be considered on summary judgment motion if answered under oath); Van Dyke v. Bixby, 388 Mass. 663, 668 (1983) (answers to interrogatories admissible but not binding). See also Frederick v. Hines, 345 Mass. 770, 771 (1963) (answers to interrogatories admissible against defendant making them); Clarke v. Taylor, 269 Mass. 335 (1929) (pleadings in another case admissible in subsequent case if material to the issue and made by the party personally). See generally P. J. Liacos, Handbook of Massachusetts Evidence, §8.8.1 (7th Ed. 1999).
Further, although the defendant seemingly “did not waive any objections to the admissibility of [Richmond’s supporting] Exhibits, she did not, although obligated to at this stage, dispute the authenticity of Exhibit D. Since such refutation is clearly necessary for the exclusion of Exhibit D, this court deems such defense waived. Moreover, even though Exhibit D is from a prior proceeding in which Richmond was not a party, the statements relied on were made by the defendant, under oath. It would be inequitable and indeed unjust, to permit the defendant to recant those statements she swore were true under the pains and penalties of perjury.

 See Exhibit 3 attached to the Defendant’s Affidavit in Opposition to Plaintiffs motion and Exhibit D attached to Richmond’s motion for summary judgment.

 It should be reiterated here that Carney, and not the defendant, provided at least $60,000 towards the purchase of the property.

 Although there is no evidence as to the real reason for the underlying Agreement, given that (1) Carney had twice attempted, and twice failed to discharge his debt to Richmond in bankruptcy, and (2) had agreed to pay all costs associated with the property, including the mortgage, taxes and carrying costs, it does not take a leap in imagination to infer that the *649 reason behind this arrangement (the defendant taking title in her name) was to protect Carney from creditor attack. As a court of law, equity, and common sense, this court cannot be oblivious to all facts presented.

 While Richmond’s pleadings seek payment of $285,000, at oral argument on the instant motion, counsel conceded that the outstanding debt has been reduced by the $50,000.00 payment.

 See Defendant’s carefully worded Affidavit in Opposition to Plaintiffs Motion for Summary Judgment in which she states that “the property . . . was purchased on August 19, 1998. Although it would have been easy for her to do so, she does not state that she purchased the property.

 This remedial device is no different than a creditor’s effort to reach assets of an express trust established by or for the benefit the debtor-beneficiary. See Ware v. Gulda, 331 Mass. 68, 70 (1954) (finding one cannot place property in trust for his own benefit and keep it beyond the reach of creditors). Accord State Street Bank and Trust v. Reiser, 7 Mass.App.Ct. 633, 636 (1979) (creditor may reach trust assets to satisfy debt even if trust contains a so called spendthrift provision restraining the alienation of trust assets).