PETER P. BARCHE *vs.* MILDRED T. SHEA.

Middlesex.    November 9, 1956. — January 31, 1957.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Trust,* Resulting trust, Implied trust.  *Real Property,* Straw owner.
    *Equity Jurisdiction,* Plaintiff's clean hands.

Where husband and wife holding real estate in equal interests conveyed
    it to their son as a mere straw for their convenience, "their interests
    · . . . remaining the same," and the son acquiesced in their arrange-
    ment and recognized the absence of any beneficial interest in himself
    and his obligation to deal with the title as they might direct, the
    proper conclusion was that the son held the property on a trust for
    each parent to the extent of a one-half interest; and, upon his mother's
    persuading him to convey the property to her, she held it on the same
    trust for his father to the extent of the father's half interest.  [370–371]
In a suit in equity brought to enforce the plaintiff's one-half interest in
    real estate after the defendant had obtained and recorded a deed of
    the property from a straw holding it in trust for both the plaintiff
    and the defendant as equal beneficial owners, the mere fact that follow-
    ing such conveyance to the defendant the plaintiff himself sought and
    obtained a deed from the straw did not bar relief on the ground of
    unclean hands.  [371]

BILL IN EQUITY, filed in the Superior Court on November 3,
1952.

The suit was heard by *Warner,* J.

*Jean E. de Valpine,* for the defendant.

*Vincent A. Canavan,* for the plaintiff.

CUTTER, J.  This is a bill in equity by which the plaintiff
seeks to establish an interest in a three family house and lot
in Somerville as against his former wife, the defendant
(now Mrs. Shea), who holds legal title to this real estate.
The trial judge made extended findings and an order,
pursuant to which a final decree was entered that Mrs.
Shea holds the real estate "upon trust, subject to a one-
half equitable interest in the plaintiff," and providing three
appropriate methods by which the plaintiff could be assured

his one-half interest.   The case is here upon the defendant's appeal.   The evidence is not reported.

In December, 1947, the plaintiff and the defendant, then husband and wife, sold some property, not involved in the present case, owned by them as tenants by the entirety and realized net proceeds of $4,400.   One half of the proceeds was divided finally between the spouses.   The second half of the proceeds was turned over to the wife to be deposited in a bank, for later application, in the interest of both spouses, toward purchase of another house.   In November, 1949, they purchased, as tenants by the entirety, the three family house here involved, paying $2,900 net above mortgages, of which $2,200 came from the bank account just mentioned and $700 was paid in cash by the plaintiff.

In August, 1951, the couple were having marital difficulties and divorce proceedings were contemplated.   On November 5, 1951, the plaintiff obtained a decree of divorce nisi.   The couple feared unnecessarily[1] that complications would arise affecting the house in the event of a divorce. Accordingly, after consulting an attorney in November, 1951, they decided to put "title in someone as a straw." They thereupon, without consideration, executed a deed of the premises to their twenty year old son, then in Korea as a member of the Air Force, "as a mere convenience or straw," intending no gift to him, but regarding "their interests . . . as remaining the same" to be separated in some manner after the divorce should become final.   No physical delivery of the deed to the son ever took place at any time and no express acceptance of a trust by him was possible at the time of the deed.   The deed was kept by the wife after it had been recorded by the grantors.   The son was told of the deed by his mother in May or June, 1952, about the time the divorce became final and several months after the son's return from Korea.

---

[1] See *Bernatavicius* v. *Bernatavicius,* 259 Mass. 486, 490; *Childs* v. *Childs,* 293 Mass. 67, 70–71, holding that on divorce a tenancy by the entirety becomes a tenancy in common.   See also cases collected in Swaim, Crocker's Notes on Common Forms (7th ed.) § 120.

The son, who was living with his mother, the defendant, on August 2, 1952, was persuaded, after at least one earlier attempt on her part, to give to his mother a deed of the property. She then concealed from her son that, in disregard of the Massachusetts statutory prohibition against remarriage[1] for two years, she proposed shortly to marry in New Hampshire one Shea to whom she was then engaged. The plaintiff did not know of the deed, which was promptly recorded. The defendant very shortly thereafter married Shea. On August 23, 1952, after learning of the marriage, the son at the request of the plaintiff, his father, and without informing his mother, the defendant, also gave to his father a deed of the three family house. The son did not tell the plaintiff about the prior deed to the defendant. The father then married the defendant's sister.

The trial judge found that both deeds were obtained from the son under circumstances which in equity ought not to be countenanced, that neither party ought to obtain advantage from the deeds, and that the respective interests in the property of the spouses were one half in each.

The trial judge's ultimate findings and conclusions were warranted by his subsidiary findings. At the outset, the parties owned the three family house as tenants by the entirety, the plaintiff having contributed at least half of the purchase price. It could have been found, indeed, that the plaintiff had contributed at least $700 more than half of the consideration for the new house, but since he has not appealed, he is not entitled to a more favorable decree. See *Greenaway's Case,* 319 Mass. 121, 122. The transfer of the house to the son contemplated that the beneficial interests in the house were to remain the same half interests as before. Although, because of the son's absence in Korea at the time of the conveyance, there was then no express promise or oral or written declaration of trust by the son, the subsidiary findings show that, after he learned of the conveyance, he never asserted that he had any beneficial

[1] G. L. (Ter. Ed.) c. 208, § 24, as amended by St. 1943, c. 168, § 1.

interest in the property; that he apparently recognized that he never was intended to have any such interest; and that his attitude toward the property was one of practically supine acquiescence in the plans and wishes of his parents, or of whichever one of them happened to be nearer to him at the moment.

He was at most a straw or nominee (*Collins* v. *Curtin,* 325 Mass. 123, 125) holding a naked record title for the benefit of his parents.

Under all the circumstances relating to the deed to the parties' son (when viewed as a whole and as part of a single transaction), it can be concluded that the son held the record title subject to a trust in favor of each grantor to the extent of a one-half interest, and was wholly prepared to recognize a fiduciary obligation to deal with the record title as his parents might direct. *Abalan* v. *Abalan,* 329 Mass. 182, 183–184 (silent acquiescence of a grantee in an arrangement for reconveyance was held to give rise to a trust for the grantors, where, as here, the statute of frauds[1] was not pleaded). Compare *Goldston* v. *Randolph,* 293 Mass. 253, 258; *Hiller* v. *Hiller,* 305 Mass. 163.

*Abalan* v. *Abalan,* 329 Mass. 182, does not overrule authorities like *Ranicar* v. *Goodwin,* 326 Mass. 710, 713, or earlier decisions cited in that case, where, in the light of the statute of frauds, oral promises to reconvey, or oral trusts with respect to land, have been held unenforceable, or cases like *Titcomb* v. *Morrill,* 10 Allen, 15, and *Gould* v. *Lynde,* 114 Mass. 366, which hold that no resulting trust arises out of acceptance of a deed of real estate absolute in its terms, even though there is absence of consideration and an express oral promise to reconvey or to hold in trust for the grantor. The *Abalan* case, however, did permit enforcement of an unwritten obligation of a grantee to hold land in trust for the grantors and on demand to reconvey that land, implied from the whole conduct of the parties, where the statute of frauds was not pleaded.

---

[1] G. L. (Ter. Ed.) c. 203, § 1; c. 259, § 1, Fourth.

There can be no doubt on the basis of the subsidiary findings that the son, left alone and subjected to no undue influence by either parent, would have executed a deed, appropriate to reflect clearly on the record the equal rights of the parents, without raising any defence based upon the statute of frauds. The defendant, in effect, knowingly induced the son to commit a breach of his fiduciary obligation (compare *Phelps* v. *Mattoon,* 310 Mass. 97, 104) which otherwise would have been performed. By thus obtaining the deed from her son, she has received performance of that fiduciary obligation covering not only her own half interest as beneficiary but that of her husband, thus making it impossible for the son to carry out the trust with respect to his father's half share. Under the unusual circumstances here present, she must take the record title subject to the fiduciary obligation which the son was under a duty to carry out (see Restatement: Trusts, § 288; compare *Bodman* v. *Martha's Vineyard National Bank,* 330 Mass. 125, 129–130) and which he would have carried out, except for her action in contravention of the arrangement with her husband in which she had participated from the outset.

There is no reason here for denying relief to the plaintiff because of want of "clean hands" in that he also sought to obtain a deed from his son. The conduct of the plaintiff was not so blameworthy (compare *Kerwin* v. *Donaghy,* 317 Mass. 559, 573; Scott, Trusts, [2d ed.] § 422.5) as to bar relief. He does not have to rely here on his improper conduct (compare *Finkovitch* v. *Cline,* 236 Mass. 196, 199–200, with *Porter* v. *Harrington,* 262 Mass. 203, 207–208) or upon the deed which he improperly obtained (see *Rugo* v. *Rugo,* 325 Mass. 612, 619). No defence based on the plaintiff's conduct has been pleaded and no harm has been caused to the defendant by the deed from the son to the plaintiff. See *Rotondi* v. *Rotondi,* 325 Mass. 503; *Bohaker* v. *Koudelka,* 333 Mass. 139, 142–143; Pomeroy, Equity Jurisprudence (5th ed.) § 399 at page 99.

*Decree affirmed with costs of appeal.*