Fremont-Smith, J.
*456 Procedural History
Plaintiff, Herbert L. Smith (“Smith”) filed two actions against the defendant Lorraine V. Di Martino, Executrix of the Estate of Mildred Y. Smith (“Di Martino”). The first action, filed in the Suffolk Probate and Family Court, alleged that Di Martino held the premises at 63 Wordsworth Street, East Boston, Massachusetts (“the premises”) on a resulting trust for the benefit of the plaintiff. The second action, filed in this court, alleged unjust enrichment and sought damages in quantum meruit. With the assent of the parties, the two cases were consolidated for trial by order of both this court and the Probate Court. The trial was held on July 29, 1994. Based upon all of the credible evidence, this court makes the following findings, rulings and judgment.
FINDINGS OF FACT
Plaintiff, Herbert L. Smith, is a resident of Stone-ham, and the defendant, Lorraine V. Di Martino, is the Executor of the Estate of Mildred Yolanda Smith, duly appointed by the Suffolk Probate & Family Court Department No. 92P-1164, on June 26, 1992. She is a daughter of said Mildred Y. Smith and resides in Billerica. Plaintiff is the son of Herbert H. Smith, who died in 1987, and of Nora D. Smith who died in 1938, when plaintiff was eight years old. In 1942, when plaintiff was twelve, he became, as a practical matter, responsible for the care of his three siblings. Not only did he act as a surrogate parent, doing the housework, including cooking, cleaning and laundry, but he looked out for his brothers after school. His father, who had an intimate relationship with another woman and her family, was rarely home, and was frequently under the influence of alcohol and abusive to his children when he was at home. In 1945, the plaintiffs father received a notice for plaintiff and his family to quit their apartment because the owners wanted the apartment for themselves and plaintiff, then fifteen, undertook to find a new apartment for the family. After a six-month search, the plaintiff, then sixteen years of age and working part time, successfully negotiated with the owner to purchase the premises for $3,900. As the plaintiff was not of legal age and his father refused to purchase the premises himself, plaintiff proposed to his father that plaintiff would take all ownership responsibilities if his father would agree to have the property placed in his (the father’s) name and would agree to execute the mortgage, the plaintiff himself undertaking to make all payments from the income he was earning from part-time and summer employment,[1] and from renting the other apartment in the premises. Plaintiffs father, who paid nothing, went along. The down payment was made from $450 the plaintiff had earned from his summer and part-time employment, $400 from cashing his and his sister’s life insurance policies, $300 from his and his sibling’s victory savings bond and $250 loaned by an uncle, Enos Smith (which loan the uncle later had forgiven). At the same time, at plaintiffs insistence, plaintiffs father executed a will making plaintiff the sole heir to his estate in the event of his death. The plaintiff proceeded to personally make all mortgage payments for the first six years, collecting the rent from the first floor apartment and combining that income with his own earnings in order to make cash payments to the Enterprise Cooperative Bank in East Boston. His father contributed nothing. During this time, plaintiff alone transacted all business with the tenants, and otherwise managed the premises.
Before entering military service in 1953, plaintiff transferred ownership of his automobile, worth $1,200, to his father, in lieu of the mortgage payments he would miss while in the service. The automobile remained his father’s property and was never returned.[2]
As a result of plaintiffs having entered military service, both of the plaintiffs brothers were forced to drop out of high school because they had inadequate clothing (which their father refused to provide) and because they were required to obtain employment for their own support.
In 1953, plaintiff returned to live at the premises with his father and subsequently married and moved into the second apartment with his wife. During the period 1953-1956, plaintiffs father made the $50 monthly mortgage payment, but with the plaintiffs money, as he paid his father $50 monthly and also paid the taxes and water and repair bills, until the mortgage was paid in full in 1958.
In 1957, plaintiff had purchased a home in Stone-ham, and prior thereto, had discussed with his father selling the premises and using the proceeds to purchase the Stoneham home. His father had at first agreed to the proposal, but later refused, stating that he did not want to move from East Boston. His father reassured plaintiff, however, that “when the time comes, the house will be yours,” stating that he had made a will to that effect.
In 1960, plaintiffs father married Mildred Smith and, in 1964, without the knowledge of plaintiff or his siblings, conveyed the premises to himself and Mildred as tenants by the entirety. Plaintiff and his siblings discovered this transfer only after the death of his father on March 3, 1987. In 1987, Mildred Y. Smith’s attorney informed plaintiffs late brother, Arthur Smith, who informed plaintiff, that Mildred Y. Smith had executed a mirror will to that executed by Herbert H. Smith on June 17, 1985, which provided that all the property of Herbert H. Smith and Mildred Y. Smith would be divided equally between the heirs of Herbert H. Smith and Mildred Y. Smith after their deaths. After the death of Herbert H. Smith in March 1987, however, Mildred changed her will so as to leave nothing to the plaintiffs children.
After Mildred’s death, the premises were sold, on August 18, 1993, with $92,121.76 being realized, after *457 expenses, from the sale. By stipulation of the parties, dated October 30, 1992, and incorporated into a Temporary Order of the Suffolk Probate Court of that date, the proceeds from the house were placed in an escrow account, with defendant’s lawyer, Harriet Onello, as escrow agent. The escrow account contained $93,797 at the time of trial.
CONCLUSIONS OF LAW
It is well settled that “where one buys and pays for real estate, but the conveyance of title is to another, a trust results in favor of the one who paid the consideration . . .” Howe v. Howe, 199 Mass. 598, 600 (1908); Murphy v. McKenzie, 1 Mass.App.Ct. 553, 555-56 (1973).
In addition to a resulting trust, “a constructive trust is imposed in order to avoid the unjust enrichment of one party at the expense of another where legal title to the property is obtained (a) by fraud or (b) in violation of a fiduciary relationship or (c) where information confidentially given or acquired is used to the advantage of the recipient at the expense of the one who disclosed the information.” Coelho v. Coelho, 2 Mass.App.Ct. 433, 435 (1974), Barry v. Covich, 332 Mass. 338, 342-43 (1955). Although a constructive trust, like an express trust, may be enforced even against those who take property without notice of the trust where they have paid no consideration for the conveyance, Orlando v. Ottaviani, 337 Mass. 157 (1958), the court finds that it is probable that Mildred had learned of the arrangement before she took title, if not from her husband (plaintiffs father), then from the plaintiffs aunt. Here, moreover, plaintiffs father owed a fiduciary duty to his son, not only because of the familial relationship, but because the plaintiff, while still a minor, had been forced, by his father’s dereliction, to assume an almost parental responsibility for the family, and because the plaintiff was encouraged by his father to place his trust and confidence in him to ensure that plaintiff would be provided with the property “when the time comes.” It is clear from the history of events that when plaintiffs father refused to purchase the premises but told plaintiff he should himself buy the property, both plaintiff and his father understood that the premises rightfully belonged to the plaintiff, and that plaintiffs father was acting in the capacity of a “straw,” i.e. a trustee for his minor son. See Barche v. Shae, 335 Mass. 367, 369-70 (1957).
JUDGMENT
For the foregoing reasons, judgment is entered for the plaintiff. The escrow agent for the proceeds of the sale of the premises, Harriet Onello, Esq., is hereby ordered to pay, within twenty-four hours of her receipt of this judgment, the entire proceeds of the sale of the premises, together with all interest thereon, to the plaintiff.

 At that time, plaintiff was enrolled in a cooperative industrial course at East Boston High School and attended school one week and worked at Bunny Bear Leather hill time the following week. Due to absences occasioned by his purchase of the house and care for his younger brothers, plaintiff {who had a good grade point average) was forced to repeat his junior year in high school.

 Plaintiff had purchased the automobile with a $1,200 Christmas bonus he had received from Jordan Marsh, where he was employed in the Boston store’s toy department.