CITIZENS BANK OF MASSACHUSETTS *vs.* PAMELA BAKER COLEMAN.

No. 12-P-365.

Suffolk. October 10, 2012. - May 15, 2013.

Present: GRASSO, FECTEAU, & AGNES, JJ.

*Husband and Wife,* Conveyance between spouses. *Trust,* Resulting trust. *Unjust Enrichment.*

In a civil action arising from a husband's purported transfers to his wife, as an alleged estate planning maneuver, of the beneficial interests in two pieces of real property, sufficient evidence was presented to warrant the finding that the transfers gave rise to resulting trusts, given that the husband did not intend the transfers as a gift but, rather, purported to convey title to the properties to nominee trusts with his wife named as the sole beneficiary for the purpose of protecting the properties from creditors [611-619]; further, the judge correctly allowed the plaintiff creditor to reach the properties and apply them against the husband's debt [619].

In an action to reach and apply certain real property assets purportedly held by the defendant wife to satisfy debts owed by her husband, the creditor's claim for a resulting trust was not barred by the statute of limitations, where, viewing the underlying action properly as one in equity, the wife's statute of limitations defense should be assessed as a defense of laches, and the wife offered no evidence that she had been prejudiced by the timing of the creditor's action; and where, even if the underlying claim were viewed as contractual, the wife did nothing to repudiate or terminate the trust resulting from the husband's purported transfers; further, there was no merit to the claim that the creditor or its predecessor in interest should reasonably have discovered the factual basis for its cause of action when the husband transferred the properties. [619-620]

In an action to reach and apply certain real property assets purportedly held by the defendant wife to satisfy debts owed by her husband, the judge correctly concluded that the wife had not received and disposed of rents in such a way that equity required that she should not retain them. [621]

CIVIL ACTION commenced in the Superior Court Department on June 16, 2005.

The case was heard by *Stephen E. Neel,* J.; entry of judgment was ordered by *Janet L. Sanders,* J., and motions to alter or amend the judgment were heard by her.

*Steven B. Rosenthal* for the defendant.

*Robert L. Hamer* for the plaintiff.

AGNES, J. The principal question presented by this appeal is whether the judge was correct in determining that the purported transfers of the beneficial interests in two pieces of real estate by a husband to his wife as an alleged estate planning maneuver failed and thereby gave rise to resulting trusts. We conclude that the judge was warranted in finding that at the time of the transfers the husband's intent was to protect the two properties from his creditors, and that he did not intend to convey the beneficial interests to his wife. The combination of the husband's intent and his wife's tacit agreement to act as his agent supports the judge's ruling that the two properties were held by the wife, as trustee, in resulting trusts for her husband's benefit and thus were subject to reach and apply actions by his creditor. We therefore affirm.

*Background.* The plaintiff, Citizens Bank of Massachusetts (Citizens Bank), brought this reach and apply action to obtain assets purportedly held by the defendant, Pamela Baker Coleman (wife), to satisfy debts owed by her husband, Martin J. Coleman, III (husband), a real estate developer. The case was tried without a jury. We summarize the pertinent facts, drawn from the judge's findings of fact, rulings of law, and order of judgment.

In April of 1983 and 1984, the husband purchased, in his own name, two multifamily rental properties (collectively, rental properties) in Waltham: 331-333 Grove Street (Grove Street property) and 156-158 Ash Street (Ash Street property). The judge found that the husband furnished all the consideration to acquire these properties. In 1986, the husband and wife were married, and the wife began managing the properties. The judge found that the wife dealt with all issues relating to the tenants (including rent collection and filling vacancies) and superintended the maintenance, repairs, and payment of bills. In 1988, the husband experienced financial trouble, owing to his default on a $6.2 million construction loan, which he had personally guaranteed, for a development called Sunset Cove. This triggered defaults by the husband on other obligations, including his mortgage obligations on the rental properties.

On March 31, 1989, the husband transferred, by separate deeds, for nominal consideration, title to both rental properties to two respective nominee trusts,[1] with the wife named as the sole

---

[1] The husband transferred the Ash Street property to himself as trustee of the

beneficiary of each trust. The judge found that these transfers were subject to outstanding mortgages on the rental properties. The judge also found that there was no evidence in the record that the wife paid any amounts toward the outstanding mortgages, although, as noted above, she collected rents and paid the obligations of the rental properties. In rejecting a proposed finding of fact, filed by the wife, to the effect that she had not been involved in the management of the rental properties, the judge pointed to a letter written by the husband to one of his creditors in 1990, one year after his purported gift of the properties to his wife, in which the husband maintained he owned the equity value of the properties.

In 1994, the Federal Savings Bank (FSB) obtained a judgment in the amount of $609,241.64 against the husband in an action which arose from a deficiency in the payment of a loan issued in 1991. FSB was subsequently placed in receivership, and was ultimately acquired by U.S. Trust in 1998. U.S. Trust was acquired by Citizens Bank in 2000. Neither FSB, its receiver, nor U.S. Trust made any attempt to reach and apply the wife's assets to satisfy the 1994 judgment. In 2005, Citizens Bank instituted the present action. After a bench trial, the judge ruled that the wife held the rental properties in resulting trusts for the husband, and that Citizens Bank could reach and apply these properties against the husband's debt. The judge also ruled that the bank was not entitled to an accounting to recover any excess rents. The case is before us on the parties' cross appeals.[2]

*Discussion.* We review the judge's findings of fact for clear error, his rulings of law de novo, and the imposition of equitable remedies for abuse of discretion. *Cavadi* v. *DeYeso*, 458 Mass. 615, 624 (2011).

---

Access Realty Trust and the Grove Street property to Thomas J. Dimare as trustee of the Grand Realty Trust. Although the wife subsequently became a trustee of both trusts, the record title remained in the name of the original trustees.

[2]The wife appeals from the judgment and the order denying her motion to alter or amend the judgment. Citizens Bank appeals from the judgment and challenges the denial of its motion for further rulings of law and entry of judgment, and the denial of its motion to alter or amend the judgment. The complaint included eight counts. The only counts relevant to this appeal are count four, alleging that the wife held the rental properties in resulting trusts, and count five, alleging unjust enrichment.

1. *Resulting trust.* A. *A resulting trust may be implied despite a gratuitous, voluntary transfer of property.* The trial judge correctly ruled that resulting trusts existed, although we do not agree with his reasoning that this case involves purchase money resulting trusts. A resulting trust "is a reversionary, equitable interest implied by law in property that is held by a transferee, in whole or in part, as trustee for the transferor or the transferor's successors in interest." *Eaton* v. *Federal Natl. Mort. Assn.*, 462 Mass. 569, 577 n.10 (2012), quoting from Restatement (Third) of Trusts § 7 (2003). A resulting trust pivots on the key element of intent.[3]

> "The case is made by showing circumstances which raise a presumption that the person making the transfer or causing it to be made did not intend to give the transferee the beneficial interest in question, and thus that the interest remained in the transferor or payor or his or her estate."

Restatement (Third) of Trusts § 7 comment a, at 87.[4]

Ordinarily, a resulting trust is implied by courts when "a transfer of property is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration." *Meskell* v. *Meskell*, 355 Mass. 148, 150 (1969). The trust that arises in such a situation is referred to as a "purchase money resulting trust." See Restatement (Third) of Trusts § 7 comment c, at 89; Bogert, Trusts and Trustees § 454, at 299-302 (3d ed. 2005). See generally 6 Scott, Fratcher, & Ascher, Scott and Ascher on

---

[3] A "constructive trust," on the other hand, is implied for different reasons. " 'A constructive trust is a flexible tool of equity designed to prevent unjust enrichment resulting from . . . a violation of a fiduciary duty or confidential relationship, mistake, or "other circumstances" in which a recipient's acquisition of legal title to property amounts to unjust enrichment.' . . . A constructive trust also may be imposed as a result of fraud on the transferor." *Cavadi*, 458 Mass. at 627, quoting from *Maffei* v. *Roman Catholic Archbishop of Boston*, 449 Mass. 235, 246 (2007), cert. denied, 552 U.S. 1099 (2008). See Restatement (Third) of Trusts § 7 comment d, at 90 (distinguishing resulting trust from constructive trust).

[4] See Black's Law Dictionary 1653 (9th ed. 2009) (defining resulting trust as "[a] remedy imposed by equity when property is transferred under circumstances suggesting that the transferor did not intend for the transferee to have the beneficial interest in the property").

Trusts § 40.1.2 (5th ed. 2007). In such a case, the nominal title holder is said to hold the property in trust for the benefit of the person who paid the consideration based on the "natural presumption that, in the absence of anything to show the contrary, he who supplies the purchase price intends that the property bought shall inure to his own benefit and not that of another, and that the conveyance is taken in the name of another for some incidental reason." *Quinn* v. *Quinn*, 260 Mass. 494, 501 (1927). See *Simmons* v. *Smith*, 20 Mass. App. Ct. 775, 778 (1985), and cases cited.

The husband's acquisition of the rental properties in 1983 and 1984 did not give rise to purchase money resulting trusts. The husband was not only the one who advanced the purchase money, but also the one to whom the transfers were made. Regardless of the husband's intent at the time of the 1989 purported transfers to his wife, it could not cause resulting trusts to arise as of the dates the husband acquired the properties in 1983 and 1984. "[A] resulting trust must arise, if at all, at the time of the execution of the deed." *Maffei* v. *Roman Catholic Archbishop of Boston*, 449 Mass. 235, 254 (2007), cert. denied, 552 U.S. 1099 (2008) (quotation and citation omitted).[5] A purchase money resulting trust did not arise in 1989 because the husband did not advance the purchase money for the wife.

This turn of events, however, does not lead to the conclusion that the property held by the wife is beyond the reach of the husband's creditors. "[A] decision may be affirmed on appeal if the judge is 'right for the wrong reason, even relying on a principle of law not argued below.' " *Segal* v. *First Psychiatric Planners, Inc.*, 68 Mass. App. Ct. 709, 719 n.4 (2007) (Meade, J., dissenting), quoting from *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992). "A resulting trust may be decreed under a variety of circumstances that do not involve purchase money resulting trusts." Bogert, Trusts and Trustees § 451, at 286. The circumstances of this case involve gratuitous transfers to a family member. There is no presumption of a resulting trust in such a case. See *Dwyer* v. *Dwyer*,

---

[5]See *Kennedy* v. *Innis*, 339 Mass. 195, 202 (1959) ("[N]othing done after the completion of the purchase [a]ffects the creation of a trust"). See also *Epstein* v. *Epstein*, 287 Mass. 248, 252-253 (1934) (same).

275 Mass. 490, 494 (1931); *Meskell,* 355 Mass. at 151; *Cavadi,* 458 Mass. at 631. See also Restatement (Third) of Trusts § 9(2). Instead, there is a contrary presumption of a gift. Restatement (Third) of Trusts § 7 comment c, at 89-90. However, that presumption is not conclusive. "[T]he presumption, whether of resulting trust or gift, may be rebutted in whole or in part by evidence of a different intention." *Id.* at 89. This is such a case. Based on the judge's findings regarding the husband's intent at the time of the 1989 transfers and the wife's conduct thereafter, resulting trusts arose at the time of the transfers. This conclusion is supported by the reasoning in cases such as *Barche* v. *Shea,* 335 Mass. 367 (1957), and *Abalan* v. *Abalan,* 329 Mass. 182 (1952), in which the Supreme Judicial Court imposed a resulting trust in circumstances which involved a gratuitous voluntary transfer of property to a family member.

In *Abalan,* the Supreme Judicial Court held that the parents' conveyance of a piece of real property that they had owned for a number of years to their daughter, incidental to mortgaging the property, with the expectation that the daughter would reconvey it to them on demand, gave rise to a resulting trust in favor of the parents. *Id.* at 183-184. The court concluded that the evidence supported the judge's findings that the daughter knew the conveyance was not intended as a gift and assented by her silence to the parents' plan that she reconvey the property on demand. *Id.* at 184.

The wife argues that the *Abalan* decision does not apply to this case because in *Abalan* the basis of the resulting trust was a promise to reconvey, which is not present here. This is a misreading of *Abalan.* The reasoning in *Abalan* was not premised on enforcing an oral promise, but on the intent of the parents, coupled with the daughter's knowledge of, and acquiescence in, the object of their intent. As the court reasoned:

> "The judge has failed to find that there was any express promise to reconvey. But he finds that there was no intention to make any gift to the defendant, and that the intention was that she should hold the property for her parents and reconvey it to them on demand. He finds that the defendant knew the purpose for which the property was conveyed to her. . . . 'To lead a person reasonably to sup-

pose that you assent to an oral arrangement is to assent to it, wholly irrespective of fraud.' . . . Upon the findings of the judge we think that the defendant knew that there was no gift to her and that her parents expected her to reconvey on demand. By her silence she led them reasonably to suppose that she assented to the arrangement and to expect that she would claim no beneficial interest in the property."

*Id.* at 183-184 (citation omitted). In *Barche, supra* at 370, the Supreme Judicial Court made clear that *Abalan* did not enforce a "promise" but an "obligation . . . implied from the whole conduct of the parties."[6] The *Barche* court stated:

"*Abalan* v. *Abalan*, 329 Mass. 182, does not overrule authorities . . . or earlier decisions . . . where, in the light of the [S]tatute of [F]rauds, oral promises to reconvey, or oral trusts with respect to land, have been held unenforceable, or cases . . . which hold that no resulting trust arises out of acceptance of a deed of real estate absolute in its terms, even though there is absence of consideration and an express oral promise to reconvey or to hold in trust for the grantor. The *Abalan* case, however, did permit enforcement of an unwritten obligation of a grantee to hold land in trust for the grantors and on demand to reconvey that land, implied from the whole conduct of the parties, where the [S]tatute of [F]rauds was not pleaded."

*Barche*, 335 Mass. at 370 (citations omitted).[7]

In *Barche*, the court concluded that a son held his parents'

---

[6]The citation in *Abalan, supra* at 184, to *Goldston* v. *Randolph*, 293 Mass. 253 (1936), makes it clear that the *Abalan* court based its decision on the resulting trust theory. In *Goldston, supra* at 258, the court held that where the owner by survival of a joint bank account transferred it without consideration to the estate of the deceased joint owner under the mistaken belief (induced by the attorney for that estate, though not fraudulently) that the transfer was necessary for the survivor later to obtain the deposit, the transferee took title in a resulting trust. The court reasoned that as the trial court judge had found that the plaintiff donor "did not intend to transfer . . . permanently or to waive or surrender his rights to the account," the evidence supported "a reasonable inference [that the transferees] had notice of the purpose of the transfer." *Ibid.*

[7]The reference in *Abalan* to the Statute of Frauds does not mean that a

land in a resulting trust, in circumstances which indicated that his parents did not intend to make a gift of the land to him, but instead made the transfer for the purpose of protecting the property from any possible repercussions due to divorce proceedings. *Id.* at 367. In addition to inquiring into the intent of the transferors, the court also considered the transferee's acquiescence in such intent:

> "[T]he subsidiary findings show that, after [the son] learned of the conveyance, he never asserted that he had any beneficial interest in the property; that he apparently recognized that he never was intended to have any such interest; and that his attitude toward the property was one of practically supine acquiescence in the plans and wishes of his parents . . . . He was at most a straw or nominee holding a naked record title for the benefit of his parents."

*Id.* at 369-370 (citation omitted).[8]

B. *Application of the resulting trust doctrine.* Based on the reasoning in *Abalan*, 329 Mass. at 183-184, and *Barche*, 335 Mass. at 367, 369-370, the presumption that a gratuitous transfer to a family member is a gift may be overcome and a resulting trust may be imposed if it is established that (1) the intent of the transferor at the time of the transfer was not to convey the

---

court is prohibited from considering evidence of an unenforceable promise or agreement in determining whether to imply a resulting trust. The Statute of Frauds is inapplicable to resulting trusts. See G. L. c. 203, § 1 ("No trust concerning land, *except such as may arise or result by implication of law*, shall be created or declared unless by a written instrument signed by the party creating or declaring the trust or by his attorney" [emphasis supplied]); *Hanrihan* v. *Hanrihan*, 342 Mass. 559, 567 (1961) (Statute of Frauds not applicable to a purchase money resulting trust). Accord *Howe* v. *Howe*, 199 Mass. 598, 601 (1908) ("a [resulting] trust may be established by parol, and the [S]tatute of [F]rauds does not apply"). See generally Bogert, Trusts and Trustees § 452. See also Perry, Trusts and Trustees § 124 (7th ed. 1929). Because a resulting trust is not based on the existence of a promise to reconvey the property, it does not involve the enforcement of a contract, but instead the validation of the intent of the transferor. The court may therefore consider promises and agreements, oral or written, as well as the conduct of the parties, for the purposes of establishing a resulting trust.

[8]See *Goldston* v. *Randolph*, 293 Mass. 253, 258 (1936) (where the owner by survival of a joint bank account transferred it without consideration to the estate of the deceased joint owner under the mistaken belief [induced by the attorney for that estate, though not fraudulently] that the transfer was necessary for the survivor later to obtain the deposit, the transferee took title in a resulting trust).

beneficial interest to the transferee, and (2) there was acquiescence on the part of the transferee. There is no requirement that an agreement exist between the transferor and the transferee at the time of the conveyance, nor is it necessary to establish that the transferee promised to reconvey the property to the transferor.[9] Thus, contrary to the defendant's argument, the judge's reasoning in the present case did not breach the boundaries of the resulting trust doctrine. The judge did not find that the resulting trust existed "merely because the transfer was gratuitous." *Meskell*, 355 Mass. at 151. Nor did the judge "admit the validity of [an] oral agreement." *Quinn* v. *Quinn*, 260 Mass. at 502. His reasoning was not premised on a promise by the wife to hold the properties for the husband and to reconvey them to him at some future date,[10] but on her obligation to hold them in trust as implied from the entire course of the couple's conduct. See *Barche, supra*. See also *Kennedy* v. *Innis*, 339 Mass. 195, 202 (1959) ("the manner in which the transaction was subsequently treated by [the parties] is significant of their understanding of its nature"). Although there was a presumption of a gift by the husband to the wife, sufficient evidence was presented

---

[9]In *Cavadi*, 458 Mass. at 635, the Supreme Judicial Court made this observation:

> "Because the transaction was directly from Barnes [who already owned the property] to DeYeso, it is not possible for Cavadi [Barnes's creditor] to have shown the existence of a resulting trust. See Restatement (Third) of Trusts . . . § 7 comment (c), at 89-90; Restatement (Second) of Trusts . . . § 405, at 327 [1959] ('Where the owner of property transfers it without declaring any trust, the transferee does not hold the property upon a resulting trust although the transfer is gratuitous')."

This language simply means that proof of a gratuitous transfer is not proof of the existence of a resulting trust. This proposition is made clear by examining the authorities cited in *Cavadi, supra*. When read in context, the references to the Restatement Third and Second of Trusts concern presumptions, and mean simply that a resulting trust does not arise "*merely because* the transfer was gratuitous" (emphasis supplied). *Meskell, supra*. See *ibid.*, quoting from *Howe* v. *Howe*, 199 Mass. 598, 602 (1908). The evidence in *Cavadi, supra*, did not suggest the existence of a resulting trust. On the contrary, there was evidence that the transferee subsequently sold the property, an act consistent with ownership. By contrast, in *Abalan*, 329 Mass. at 182-183; *Barche*, 335 Mass. at 369-370; and the present case, the evidence was that the transferee acted more like an agent of the transferor than an owner.

[10]The creditors did not allege, nor try to enforce, any such promise.

to warrant the judge's finding that this presumption was rebutted and that the husband did not intend such a gift (the judge expressly rejected testimony to the contrary). See *Davis* v. *Downer*, 210 Mass. 573, 575 (1912) ("It is always open to show the facts to rebut [the] presumption [of a gift instead of a resulting trust]"). The judge found that at the time that the husband purported to convey title to the rental properties to the nominee trusts with his wife named as the sole beneficiary, he did this for the purpose of protecting the properties from the creditors, and his true and actual intent was to reserve the beneficial interest to himself.[11]

This finding is supported by the husband's numerous statements, both sworn and unsworn, demonstrating his ownership of the rental properties.[12] The judge specifically rejected the claim that the nominee trusts were created for estate planning purposes to provide for the wife's financial security. The judge also found that the wife's conduct in managing the properties after the conveyances was indistinguishable from her conduct before the conveyances, that there was "no allegation that she has either sold or purported to grant a mortgage in either [of the rental] properties" (which would be consistent with beneficial ownership), and that in managing the properties, she at all times "acted as agent for her husband, whom both understood to be the beneficial owner." Although the wife testified that she paid some expenses of the properties out of her own pocket, the judge noted that any detriment (or benefit) the wife incurred was consistent with her role as manager. Although the judge did not make a specific finding to this effect, the record also indicates that in a 1991 action pertaining to the foreclosure proceedings involving the rental properties (among others), in which the wife was a plaintiff in her capacity as trustee of Nobska Realty Trust, her attorney filed a complaint which contained the husband's statements asserting ownership in the rental properties, which neither the wife nor her attorney purported to

---

[11]The husband's fraudulent intent was relevant only insofar as it related to his lack of intent as settlor to transfer the beneficial interest. See *Cavadi*, 458 Mass. at 632.

[12]For example, the husband suggested that Citizens Bank take title to the two properties through foreclosure and stated that he was "prepared to give up [their] equity value of $152,000" while retaining the rental income until the properties went through foreclosure to help pay the outstanding debts.

repudiate. On the other hand, the record contains no evidence of conduct (by the wife or the husband) consistent with the wife being the beneficial owner of the rental properties. The judge therefore ruled correctly that the wife held the properties in resulting trusts for her husband.[13]

C. *The properties held in resulting trusts could be reached by the creditor.* The judge was also correct in allowing the creditor to reach the properties and apply them against the husband's debt.

> "The duties of a trustee of a resulting trust are limited — he or she 'is under a duty [merely to] transfer the trust property or the reversionary portion thereof to the reversionary beneficiary or in accordance with that beneficiary's directions. Until the property is so transferred, the title holder remains trustee with a duty to preserve the affected property and its product and to perform any other duties appropriate to the resulting-trust relationship.' "

*Eaton*, 462 Mass. at 577 n.10, quoting from Restatement (Third) of Trusts § 7 comment e, at 90. See *Lyons* v. *Urgalones*, 189 Mass. 424, 427-430 (1905) (creditor entitled to reach and apply debtor's interest in property standing in the name of another).[14]

2. *Statute of limitations.* The wife argues that Citizens Bank's claim for a resulting trust is barred by the six-year statute of limitations provided in G. L. c. 260, § 2. First, as Citizens Bank points out, the underlying action here is essentially equitable,

---

[13]Because we affirm the trial judge's determination of resulting trusts, we do not address the judge's rulings concerning the existence of a constructive trust or an express trust. See *Crowell* v. *Stefani*, 12 Mass. App. Ct. 966, 968 (1981) ("Since we decide that a resulting trust was created, we need not consider whether the plaintiffs are also entitled to recover on constructive trust or other theories").

[14]See also Nolan & Sartorio, Equitable Remedies § 24.4 & n.10, at 604 (3d ed. 2007) (creditors may "reach and apply property of the debtor, legal or equitable"); 3 Scott, Fratcher, & Ascher, Scott and Ascher on Trusts § 14.11, at 883 ("creditors [can] reach a debtor's equitable interests, without regard to the nature of the proceeding"); Bogert, Trusts and Trustees § 463, at 493-496 ("[I]f A pays for land and has it conveyed by absolute deed to B, with the intent of evading A's creditors, the court will render A no aid in securing the enforcement of the resulting trust . . . but the creditors of A may take his equitable interest by resorting to the procedure required").

not contractual, and thus the wife's statute of limitations defense should be assessed as a defense based on laches, see *McGrath* v. *C.T. Sherer Co.*, 291 Mass. 35, 59-60 (1935), which requires a showing of injury or prejudice. See *Cornell* v. *Michaud*, 79 Mass. App. Ct. 607, 615 (2011). The wife offered no evidence that she was prejudiced by the timing of the creditor's action. Alternatively, even if the underlying claim is viewed as contractual, whether one applies the repudiation of trust rule, see *Stapleton* v. *Macchi*, 401 Mass. 725, 729 (1988), or the discovery rule, the wife's argument still fails. The judge correctly noted that the wife did nothing to repudiate or terminate the resulting trust. Although the judge did not specifically address the wife's argument that Citizens Bank or its predecessor in interest should reasonably have discovered the factual basis for its cause of action when the husband transferred the properties in 1989 and recorded the events in the registry of deeds, we will address it here. See *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 106 (1980).

The purpose of statutes of limitations is "to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties, or their representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure, from the lapse of time, or the defective memory, or death, or removal of witnessess." *Joslyn* v. *Chang*, 445 Mass. 344, 351 (2005), quoting from *Spring* v. *Gray*, 22 F. Cas. 978, 984-985 (C.C.D. Me. 1830), aff'd, 31 U.S. (6 Pet.) 151 (1832). That purpose is not implicated in a case like this in which the husband took steps to conceal his true intent when he conveyed the beneficial interest in the two properties to his wife in 1989 in circumstances in which each property was heavily mortgaged. Citizens Bank's claim is not grounded in a claim that there was a fraudulent transfer in 1989, but rather on the combination of the husband's fraudulent intent and his wife's acquiescence which led to the husband's present and continuing interest in the two properties under the theory of a resulting trust. Even if Citizens Bank or its predecessor in interest was aware that the husband transferred the beneficial interest in the two properties to his wife in 1989, that event was not notice of the facts that gave rise to the resulting trusts because, as noted earlier, *supra* at 613-614, a gratuitous transfer of property to a family member is presumed to be a gift.

3. *Unjust enrichment and accounting.*[15] Citizens Bank also requested, under the theory of unjust enrichment, an order for an accounting of the net rental proceeds for both properties and application of any such proceeds to the husband's debt. The trial judge, applying the correct legal standard for unjust enrichment, found that the wife managed the properties not only for her husband but also as proprietor of her property management business, that she devoted a substantial amount of time and effort to this undertaking, and that Citizens Bank failed to prove that she received and disposed of the rents in such a way that equity requires she should not retain them. These findings were supported by the evidence that the judge credited, in particular, the wife's testimony that she paid all required bills and mortgages on the properties, and that the rents never exceeded the expenses required to maintain the properties (and were sometimes even lower than the payments due). The record supports an inference that there were no excess rents that Citizens Bank could reach, and there was no basis for ordering an accounting. Relief in the nature of an accounting for any excess rents that might have accrued after the judge's decision may be addressed in further proceedings in the trial court.[16]

> *Judgment entered on docket July 21, 2011, affirmed.*
>
> *Order denying defendant's motion to alter or amend the judgment affirmed.*
>
> *Order denying plaintiff's motion to alter or amend the judgment affirmed.*

---

[15]It is not necessary to address Citizen Bank's argument regarding an imposition of a constructive trust in connection with the unjust enrichment count because we affirm on the ground of a resulting trust. See note 13, *supra.*

[16]Although the bank also challenges the denial of its motion for further rulings of law and entry of judgment, and the denial of its motion to alter or amend the judgment (see note 2, *supra*), the relief obtained by the bank makes it unnecessary to separately address those additional claims. As the trial judge ruled and the judgment indicates, the wife, as trustee, holds the rental properties in resulting trusts for her husband, the beneficiary, and the bank can reach and apply the husband's beneficial interests in the properties.