The defendant, Marsha S. Green, wife of Warren I. Green, appeals from a Superior Court judgment entered in 2016, after a jury-waived trial, declaring that title to a certain condominium in Newton is deemed to be held by Warren and Marsha[3] as tenants by the entirety at all times since April 17, 2006-including as of January 16, 2013, the date of Warren's Chapter 7 bankruptcy filing-notwithstanding that the condominium deed (executed in April, 2006,) purported to convey the property from its former owner solely to Marsha. That judgment entered after an unpublished decision of a panel of this court in Snider v. Green, 84 Mass. App. Ct. 1116 (2013) (Snider II ),[4] reversed the dismissal of Robert Snider's claim for a creditor's bill to impose a resulting trust, recognizing Warren's equitable interest in the condominium held in Marsha's name, in order to recover the $59,068 judgment for legal fees that Snider obtained against Warren in a separate action in 2010. We consider Marsha's multiple claims of error seriatim; concluding that none of them is persuasive, we affirm the judgment.
1. Substitution of parties and amendment of complaint. While Snider II was pending on appeal, Warren filed for Chapter 7 bankruptcy. On remand, the bankruptcy trustee successfully moved (1) to be substituted for Snider as plaintiff; and (2) to amend the complaint to assert a single claim, solely against Marsha, for a declaration that she and Warren, through a resulting trust, held the condominium as tenants by the entirety. Marsha's challenges to these rulings are unsupported by citation to pertinent legal authority and contain no explanation of how it was an abuse of discretion to allow the substitution of parties, see Williams v. Ely, 423 Mass. 467, 478 (1996), or amendment of the complaint. See Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264 (1991). As to the substitution, "[c]ourts have held that a [t]rustee is the real party in interest with exclusive standing to assert claims which are property of the bankruptcy estate." Vidal v. Doral Bank Corp., 363 F. Supp. 2d 19, 22 (D.P.R. 2005). As to amendment of the complaint, contrary to Marsha's argument on appeal, nothing in Snider II purported to limit proceedings on remand to adjudication of the original claim for a creditor's bill for a resulting trust, or to preclude amendment of the complaint to assert a closely related claim for a declaratory judgment establishing the existence of a resulting trust.
2. Motion in limine. There was no error or abuse of discretion in the trial judge's allowance of the trustee's motion in limine to preclude Marsha from contesting the judgment for $59,068 that Snider obtained against Warren in 2010. Passing the question whether Marsha was in privity with Warren so that collateral estoppel barred her from relitigating matters determined by that judgment, we uphold the ruling on an alternative ground: the amount that Warren actually owed Snider, as determined by the 2010 judgment, was not relevant to any element of the trustee's claim.
That claim required the trustee (as detailed infra ) to rebut the presumption that Warren's April, 2006, transfer to Marsha of his interest in the proceeds from the sale of their house was intended to be a gift. The trustee endeavored to do so in part by eliciting testimony from Warren that in April, 2006, he "wanted Marsha to take title to the condominium in her name only because being in the business [he was] in, there's a risk of being sued," that, in Warren's words, "I was looking to protect my assets, residence, or whatever," that he wanted to protect the condominium from "future creditor claims," that he was aware of Snider's claim for legal fees owed, and that he was concerned about a pending suit brought against him by Northstar, a business in which he previously had an interest.
The relevant issue was Warren's intent and state of mind in April, 2006, and the judge allowed Warren to testify that, as of that time, he did not believe he owed Snider any money.[5] That Warren was ultimately proved wrong by a judgment entered in 2010 has no bearing on his intent or state of mind in April, 2006. Indeed, at oral argument before us, Marsha was unable to explain why the validity or correctness of the 2010 judgment was relevant to any element of the trustee's claim. Accordingly, the motion in limine precluding the introduction of evidence on that issue was properly allowed.
3. Consideration of Warren and Marsha's post-purchase conduct. Marsha argues that the judge erred in considering Warren and Marsha's conduct after the purchase of the condominium in determining whether Warren had donative intent. We disagree.
As already determined in Snider II, because Warren and Marsha owned their former house as tenants by the entirety, the proceeds of their sale of that house constituted "personal property held by the entirety." Smith v. Tipping, 349 Mass. 590, 592 (1965). Property so held, if conveyed by one spouse acting alone, remains subject to the other spouse's survivorship right. Coraccio v. Lowell Five Cents Sav. Bank, 415 Mass. 145, 151 (1993). Marsha thus could not have expended (as she did) $480,000 of the house sale proceeds as a down payment towards the condominium purchase unless, at a minimum, Warren assented, and Warren testified that he "agreed ... to the use of those proceeds, and [he] wanted the unit purchased solely in [Marsha's] name." His agreement constituted a transfer to her of his survivorship right in the proceeds and of whatever claim he might have to hold legal title, together with her, of the condominium purchased using those proceeds.
A gratuitous intra-familial transfer of property is presumed to be a gift, but the presumption may be rebutted; if it is shown that the transferor did not intend to convey the beneficial interest in the property, and the transferee acquiesced, the presumption of a gift may be overcome and a resulting trust may be imposed. Citizens Bank of Mass. v. Coleman, 83 Mass. App. Ct. 609, 613-614, 616-617 (2013).[6] See Cavadi v. DeYeso, 458 Mass. 615, 631-632 (2011). The transferee spouse's obligation to hold the transferred property in trust may be "implied from the entire course of the couple's conduct." Citizens Bank, 83 Mass. App. Ct. at 617, citing Barche v. Shea, 335 Mass. 367, 369-370 (1957). See Kennedy v. Innis, 339 Mass. 195, 202 (1959). The judge therefore properly considered Warren and Marsha's conduct after the condominium purchase in determining whether the trustee had rebutted the presumption that Warren intended his transfer as a gift.[7]
4. Applicability of "clear and convincing evidence" standard. We reject Marsha's argument that the judge was required to apply the "clear and convincing evidence" standard in determining whether the trustee had rebutted the presumption of donative intent. Marsha failed to make this argument in the trial court,[8] and therefore it is waived. See Albert v. Municipal Ct. of the City of Boston, 388 Mass. 491, 493-494 (1983). In any event, Marsha cites no case requiring or applying such a standard; the closest she comes is Ross v. Ross, 2 Mass. App. Ct. 502, 508 (1974), cert. denied, 420 U.S. 947 (1975) ("clear evidence" standard), but other cases have not applied that standard. See Krasner v. Krasner, 362 Mass. 186, 189 (1972) ("ample evidence"); Citizens Bank, 83 Mass. App. Ct. at 617 ("sufficient evidence"). "[A] preponderance standard is generally applied in civil cases [;] ... the clear and convincing standard is applied when particularly important individual interests or rights are at stake." Doe No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 309 (2015) (quotation omitted). Marsha's property interest, while undoubtedly significant to her and Warren, does not rise to that level.[9]
5. Clearly erroneous findings. Marsha asserts clear error in various of the judge's findings that Warren exhibited indicia of ownership and control of the condominium. These findings formed part of the basis for the judge's ultimate finding and conclusion:
"[The trustee] has rebutted the presumption of donative intent and ... at all relevant time[s], including the time of purchase, Warren and Marsha's true and actual intent was that Warren would retain the same beneficial interest in the [c]ondominium that he had in their [former house] which they had owned as tenants by the entirety. As a result, equitable ownership of the [c]ondominium was in both Warren and Marsha from the time of purchase even though Marsha held title to the [c]ondominium in her name only."
We see no error in either the challenged findings of fact or in the judge's ultimate conclusion of law.
Marsha first claims error in the judge's supposed finding that Warren "controlled" the condominium as the office for his sole-proprietorship business. The judge made no such finding;[10] instead she found that Warren listed the condominium as his business address on filings with the Secretary of State and the bankruptcy court,[11] that he did a large amount of business from there, and that over a six-year period he had taken $25,000 in tax deductions for business expenses for utilities, including those associated with the condominium. These findings were supported by the evidence at trial, including Warren's own testimony that he listed the condominium as the location of the business's principal office and the place where its records would be maintained, that he did work for the business there, and that he received business mail there.[12]
Marsha next claims that there was "no evidence of [Warren's] control" of the condominium. But it was not necessary for the judge to find (nor did she find) that Warren exercised exclusive control over the condominium. What the judge actually found is that, "[s]ince their purchase of the [c]ondominium, Warren has exercised the degree of interest and control over the [c]ondominium that is consistent with that of an owner, the same [as] he exercised over their previous home" (emphasis added), which they had owned as tenants by the entirety. Marsha does not challenge that finding. The question was whether Warren intended to give Marsha, or instead retain for himself, the beneficial interest in his survivorship right in the proceeds of the sale of their previous home, and in the condominium which, by their agreement, had been purchased in Marsha's name using the proceeds of the home sale. That Warren exercised the same degree of control over the condominium as over his and Marsha's former home supports the judge's finding that he intended to have the same ownership interest in the condominium as in his former home.
Marsha finally asserts that the "finding that Warren acted as an owner of the condominium is clearly erroneous." We disagree. Again focusing on whether any indicia of Warren's joint ownership changed when he and Marsha moved from their former home to the condominium, we note Warren's testimony that he and Marsha jointly chose the condominium unit they would purchase; that they intended to live there together; that he agreed to the use of $480,000 of the house sale proceeds as a down payment towards the condominium purchase; that he wanted the unit purchased solely in Marsha's name; that in doing so, in his words, "I was looking to protect my assets, residence[,] or whatever" (emphasis added); but that he had no documentation of any intent to make a gift to her of his interest in the house sale proceeds. Nor did he testify that he intended the transfer as a gift, and Marsha testified that he never told her it was a gift.[13] Marsha also testified that "Warren resided in the condominium in the same manner that he resided in [their former home]" and "wasn't restricted in any way from using the condominium."
Further, at the time of the condominium purchase and despite the large $480,000 down payment, the bank would not give Marsha a mortgage for the remaining $420,000 of the purchase price until it took Warren's (substantially greater) income into account.[14] The judge also found that, as with their former home, it was Warren's income that paid the majority of the mortgage payments for the condominium. Marsha does not challenge this finding. Compare Goldman v. Finkel, 341 Mass. 492, 494 (1960) ("Payments subsequent to taking title cannot create a resulting trust unless they are the contemplated consideration for the conveyance" [emphasis added] ).
In sum, there was ample support for the judge's findings and conclusions that the trustee had rebutted the presumption of donative intent, that Warren intended to retain the same beneficial interest in the condominium as he had in the spouses' former home, and that Marsha shared that intent.
6. Form of relief. Marsha's final argument is that the judge erred in effectively reforming the condominium deed to specify ownership by Warren and Marsha as tenants by the entirety rather than by Marsha alone.[15] Her argument appears to be that, at most, Warren should be determined to have a beneficial interest in the house sale proceeds used to purchase the condominium, not in the condominium itself. Contrary to her argument, this was not the relief sought in Snider's original claim for a creditor's bill, the dismissal of which was reversed in Snider II; that claim sought a declaration of resulting trust as to the condominium. And it was plainly the relief sought in the trustee's amended complaint. In any event, Marsha offers no developed argument as to why such relief was erroneous, inequitable, or an abuse of the judge's discretion to fashion equitable relief so as to afford a full and complete remedy. See Johnson v. Martignetti, 374 Mass. 784, 794 (1978). We see no such abuse of discretion here.
Judgment affirmed.

As Warren and Marsha share a surname, we refer to them by their first names to avoid confusion.

In an earlier appeal, Snider v. Green, 79 Mass. App. Ct. 1102 (2011) (Snider I ), a panel of this court affirmed a judgment confirming an arbitration award in Snider's favor on his claim that Warren owed him attorney's fees.

In doing so, the judge overruled the trustee's objection that such testimony was barred by the allowance of the motion in limine.

Although Marsha is correct in observing that the decision in Citizens Bank, finding the presumption of donative intent rebutted, is distinguishable on its facts, she fails to identify any way in which the judge here either misapplied the legal principles stated in Citizens Bank or erroneously relied on that decision in finding the presumption rebutted on the quite different facts of this case.

Contrary to Marsha's argument on appeal, nothing in the judge's findings and conclusions after trial indicates that the judge viewed the issue as whether Warren intended to "hide" his assets or to engage in "fraud." Nowhere in her decision did the judge use those words or concepts. Instead, she found that both Warren and Marsha intended to "preserve" their assets by titling the condominium solely in Marsha's name. This was entirely proper in determining whether Warren intended his transfer to Marsha as a gift, particularly where Warren testified, "I was looking to protect my assets, residence[,] or whatever."

She failed to raise the point in her pretrial requests for findings of fact; her requests for rulings of law and trial memorandum; and her request for a required finding in her favor.

Regardless, the judge found "clear evidence that at all relevant times [Warren] and Marsha considered him to be an owner of the [c]ondominium in only her name with Warren having a beneficial and ownership interest in that [c]ondominium" (emphasis added). The judge concluded it was "clear that at the time of and after the sale, Warren intended and expected, with Marsha's knowledge and assent, to retain beneficial interest in the [c]ondominium, notwithstanding their agreement to purchase the [c]ondominium in only Marsha's name" (emphasis added).

Marsha's related argument that the trustee was required to prove that Warren "controlled the condominium by using it as an office" is unsupported by citation to legal authority.

He also did so on his Federal tax returns.

The judge's characterization of the deductions as "huge" and "substantially exaggerated" was not material to her finding that Warren did business from the condominium.

We acknowledge, as did the judge, that the transfer was presumed to be a gift, and the burden was on the trustee to show otherwise. Nevertheless, the judge could have drawn a negative inference from the fact that, despite being faced with the evidence discussed above and infra, neither Warren nor Marsha ever testified that the transfer was intended as a gift.

Similarly, in 2008, the bank declined to approve Marsha's application for a $50,000 home equity line of credit without taking Warren's income into account and without Warren cosigning for the line of credit.

The final judgment not only included a declaration to this effect but ordered that a certified copy of the judgment be recorded at the appropriate registry of deeds.